## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**THE ADAMS NATIONAL BANK,**
**1130 Connecticut Avenue, N.W.**
**2nd Floor**
**Washington, D.C.  20006,**

**Plaintiff,**

v.

**SEAN SHAHPARAST,**
**5301 Goldsboro Road**
**Bethesda, MD 20817,**

**Defendant.**

Civil Action No. _____

## COMPLAINT

COMES NOW Plaintiff The Adams National Bank ("Adams"), by counsel, and for its Complaint against the Defendant avers:

## PARTIES AND JURISDICTION

1.    Plaintiff Adams is a District of Columbia national banking corporation with its principal office located in this District.

2.    Defendant Sean Shahparast ("Shahparast") is a natural person and a resident of the State of Maryland.

3.    This action concerns contracts that were executed and performed in the District of Columbia.

4.    This Court has jurisdiction pursuant to 28 U.S.C. §1332(a)(1).

5.     Venue properly lies in the District of Columbia, *inter alia,* by virtue of Shahparast's contractual consent thereto, and that the transactions complained against occurred in the District of Columbia.

## FACTUAL ALLEGATIONS

6.     Shahparast is the managing member and a fifty percent (50%) owner member in 2142 O Street, LLC, a District of Columbia limited liability company. The remaining fifty percent (50%) member of 2142 O Street, LLC, is Hamid Kazemi a/k/a H. Ryan Kazemi.

7.     On or about September 30, 2004, 2142 O Street, LLC, became indebted to Adams in the original principal amount of Two Million Five Hundred Eighteen Thousand Two Hundred and No/100 Dollars ($2,518,200.00), pursuant to a Deed of Trust Note, as subsequently modified (collectively, the "Note," and the loan evidenced thereby, the "Loan"), issued pursuant to a Loan Agreement also dated September 30, 2004. A true and correct copy of the Note and Loan Agreement, are attached hereto as Exhibit 1, and Exhibit 2, respectively, and the same are incorporated herein by this reference.

8.     2142 O Street, LLC, also executed and delivered to Adams in connection with the Loan, a Credit Line Deed of Trust and Security Agreement (the "Deed of Trust") securing the Note and Loan with the

2

single asset owned by 2142 O Street, LLC, to wit, a partially improved but vacant, multi-family residential structure located at 2142 O Street, NW, Washington, DC (the land and improvements collectively hereafter called the "Property"). Adams perfected its Deed of Trust as a first priority lien against the Property by recording the Deed of Trust among the Land Records of the District of Columbia as Instrument No. 2004139452. A true and correct copy of the recorded Deed of Trust is attached hereto as Exhibit 3, and the same is incorporated herein by this reference.

    9.    As of December 11, 2006, 2142 O Street, LLC, owes Adams the following:

| Description | Amount |
| --- | --- |
| Principal | $1,252,054.77 |
| Interest | $3,685.60 |
| Late Fee | $66,805.12 |
| Release Fees | $150.00 |
| Trustee's Fee | $1,500.00 |
| Appraisal | $500.00 |
| Auctioneer Fee | $1,500.00 |
| Auctioneer Expenses | $2,700.00 |
| Real Estate Taxes | $15,226.91 |
| Water and Sewer | $3,703.17 |

|                        |                |
|------------------------|----------------|
| Attorneys' Fees        | $20,000.00     |
| TOTAL                  | $1,367,825.57  |
| *per diem after Dec. 11* | $504.29      |

10.    Pursuant to the Note, 2142 O Street, LLC is liable for all costs incurred by Adams in this litigation, including attorneys' fees.

11.    The Note is further secured by the personal guaranty of Shahparast pursuant to a Springing Guaranty, also dated and delivered to Adams in the District of Columbia, on September 30, 2004 (the "Guaranty"). A true and correct copy of the Guaranty is attached hereto as Exhibit 4, and incorporated herein by this reference.

12.    As here pertinent, the Guaranty provides that Shahparast shall be unconditionally and absolutely personally liable to Adams to the extent of any loss, damage or cost incurred by Adams resulting from: (I) the filing of any motions by Shahparast interfering with Adam's or the trustee's efforts to enforce the Deed of Trust, or (ii) the failure of Shahparast to comply with all provisions of any of the loan documents regarding delivery of financial or operating statements to Adams.

13.    As a result of a monetary default after the maturity of the Note, as well as the prior failure of 2142 O Street, LLC to provide financial and operating information, and Shahparast failing to provide personal financial information, all as required under the Note and Loan

4

Agreement, Adams duly noticed and scheduled a foreclosure sale, as provided under the Deed of Trust. The sale by public auction was scheduled to occur at 2:00 P.M., on Monday, December 11, 2006.

14.    Shortly prior to the commencement of the foreclosure auction, Shahparast caused 2142 O Street, LLC to file a chapter 11 petition in the United States Bankruptcy Court for the District of Maryland, Southern Division, Case No. 06-17987 (WIL). As a result of the filing, Adams was forced to call off the auction sale, so as not to violate the provisions of the automatic stay imposed by virtue of 11 U.S.C. § 362(a). As a result of said filing, Adams was deprived of the ability to liquidate its collateral and realize the value of its security to repay the defaulted Note. Adams also incurred additional costs and expenses as a result of the foregoing act by Shahparast.

15.    Shahparast does not have authority to act for 2142 O Street, LLC, on his own to file a bankruptcy petition. Section 5 of the 2142 O Street, LLC, Operating Agreement provides that all out of the ordinary course activities require the unanimous consent of the members.

16.    Upon information and belief, Shahparast did not obtain the consent of the other member of 2142 O Street, LLC prior to filing the bankruptcy petition.

17.    Upon information and belief, Shahparast certified falsely to the United States Bankruptcy Court for the District of Maryland, Southern Division, that a meeting of the members of 2142 O Street, LLC, had taken place, and that at such meeting the members unanimously approved a resolution authorizing Shahparast to file the bankruptcy petition to stop the foreclosure.

## COUNT I
### *(Breach of Guaranty)*

18.    Adams  hereby incorporates each of the above allegations as if fully restated herein.

19.    The Note constitutes a valid and enforceable contract between Adams and 2142 O Street, LLC.

20.    2142 O Street, LLC, has failed and refused to make the required repayment of the now matured Note.  Accordingly, 2142 O Street, LLC is in default of the Note.

21.    By virtue of the conduct alleged above, Shahparast has breached the Guaranty, and has triggered his personal and unconditional liability to Adams for all amounts due from 2142 O Street, LLC, under the Note, the Deed of Trust and the Loan Agreement.

22.    Shahparast is liable to Adams for its damages, totaling not less than $1,367,825.57, together with any additional interest, late

6

charges, all attorneys' fees and other costs of collection that may accrue until paid in full.

WHEREFORE, Adams prays for judgment against the Defendant, in the amount of not less than $1,367,825.57, together with all unpaid interest and late charges, as well as any other amounts and charges due under the Note, Deed of Trust, Loan Agreement, together with costs and an award of attorneys' fees as and for compensatory damages. and such other relief this Court determines to be just and reasonable.

Respectfully submitted,

**FRIEDLANDER, MISLER, SLOAN, KLETZKIN & OCHSMAN, PLLC**

By: */s/ Robert E. Greenberg*
Robert E. Greenberg, Esq. #173708
Thomas F. Murphy, Esq.
1101 17th Street, NW
Suite 700
Washington, DC  20036-4704
(202) 872-0800
*Attorneys for Plaintiff*

U:\greenberg\CLIENT\ADAMS\2142 O St\Litigation\Complaint Shahparast 12-14-06.wpd

JS-44
(Rev.1/05 DC)

**CIVIL COVER SHEET**

M
RMU

**I (a) PLAINTIFFS**

The Adams National Bank

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF ___DC___
(EXCEPT IN U.S. PLAINTIFF CASES)

11001

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Friedlander Misler, 1101 17th St. NW, Ste. 7(
Washington, D.C.  20036 (202) 872-0800

**DEFENDANTS**

Montgomery County

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE

CASE NUMBER   1:06CV02145

JUDGE: Ricardo M. Urbina

DECK TYPE: Contract

DATE STAMP: 12/15/2006

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZ**
FOR PLAIN

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV.  CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**☐ A. Antitrust**

☐ 410 Antitrust

**☐ B. Personal Injury/Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**☐ C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**☐ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**☐ E. General Civil (Other)  OR  ☐ F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ☐ G. *Habeas Corpus/ 2255* | ☐ H. *Employment Discrimination* | ☐ I. *FOIA/PRIVACY ACT* | ☐ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student<br>Loans (excluding veterans) |

| ☐ K. *Labor/ERISA (non-employment)* | ☐ L. *Other Civil Rights (non-employment)* | ☒ M. *Contract* | ☐ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☒ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting<br>Rights Act) |

---

**V. ORIGIN**

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ Multi district Litigation  ☐ 7 Appeal to District Judge from Mag. Judge

---

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Breach of Guaranty

---

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS  ☐  ACTION UNDER F.R.C.P. 23  **DEMAND $**  Check YES only if demanded in complaint  **JURY DEMAND:** ☐ YES  ☒ NO

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  ☐ YES  ☒ NO  If yes, please complete related case form.

DATE 12/15/06  SIGNATURE OF ATTORNEY OF RECORD  *Robert E. Greenberg*

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

# EXHIBIT 1

## DEED OF TRUST NOTE

$2,518,200.00                                                         September 30, 2004

     FOR VALUE RECEIVED, 2142 O STREET, L.L.C., a District of Columbia limited liability company (the "Borrower"), promises to pay to the order of THE ADAMS NATIONAL BANK (the "Lender"), at such place as the holder hereof may from time to time designate in writing, in lawful money of the United States of America, without defense, offset or counterclaim, the principal sum of Two Million Five Hundred Eighteen Thousand Two Hundred Dollars and No Cents ($2,518,200.00), together with interest as described below and in accordance with the following terms and provisions:

    1.    <u>Interest Rate</u>.

    (a)    Commencing on the closing of the Loan, the unpaid principal balance of the Note outstanding from time to time shall bear interest at the fluctuating interest rate equal to one-half percent (0.5%) (the "Margin") above an independent index (the "Index") which is the prime rate of interest published in the Money Rates section of the Eastern District edition of <u>The Wall Street Journal</u> on the date of closing, rounded upward, if the Lender deems necessary, to the next highest 0.125%. The interest rate shall be adjusted as and when any change in the "Index" shall occur, which may be daily. If the Index becomes unavailable during the term of the Loan, Lender may, in its sole and absolute discretion, designate a comparable alternative index after notice to Borrower. Interest shall be calculated using a 360-day year, based upon the actual number of days for which the calculation is being made. Notwithstanding the above, in no event shall the interest rate be less than five percent (5.0%) per annum. Further notwithstanding the above, in the event Lender has not received, reviewed and accepted the final plans, specifications and budget for the renovation and conversion of the Property by (i) March 30, 2005, then the Margin shall be increased to two and one-half percent (2.5%) and (ii) June 30, 2005, then the Margin shall increase to five and one-half percent (5.5%).

    (b)    It is not intended hereby to charge interest at a rate in excess of the maximum legal rate of interest permitted to be charged the Borrower under any applicable law, but if, nevertheless, interest in excess of such rate shall be paid, then the rate imposed shall be reduced to such maximum legal rate, and if from any circumstance the Lender shall ever receive as interest an amount which would exceed the highest lawful rate, such amount which would be deemed excessive interest shall be applied to the reduction of the unpaid principal balance and not to the payment of interest.

    2.    <u>Payments</u>.

    (a)    Payments of interest only on the outstanding balance shall be due and payable commencing thirty (30) days after the date of this Note and continuing on the same day of each and every month until the Maturity Date. At the Maturity Date, the then outstanding principal balance and accrued interest not yet paid shall be due and owing.

    (b)    The entire unpaid principal balance of this Note, together with all accrued and unpaid interest, shall be due and payable in full twenty-four (24) months from the date hereof (the "Maturity Date").

    3.    <u>Prepayment</u>. Partial prepayments shall be applied to installments of principal in their inverse order of maturity. Amounts prepaid hereunder may not be reborrowed.

4.    Application of Payments.  Payments made hereunder shall be applied , at Lender's sole discretion, first to accrued interest, next to late charges and costs, if any, then to any amounts due under the Loan Documents (as defined below), and any remainder to the princ i pal balance hereof.

5.    Loan Documents.  This Note is issued pursuant to a certain Loan Agreement dated of even date herewith made by and between the Borrower and the Lender (as the same may be amended, modified or supplemented from time to time, the "Loan Agreement"). The pe rformance of the Borrower's obligations hereunder is secured by, among other things, (a) that certain Credit Line Deed of Trust, Security Agreement and Fixture Filing of even date herewith (as the s ame may be amended, modified or supplemented from time to time, the "Deed of Trust") from the Borrower Lawrence R. Johnson, as trustee, granting a first priority lien on certain property owned by the Borrower and located in the District of Columbia, and more particularly described in  the Deed of Trust (the "Property"), (b) that certain Assignment of Leases and Rents of even date herewith made by Borrower for the benefit of Lender (as the same may be amended, modified or su pplemented from time to time, the "Assignment"), (c) that certain Guaranty of Payment, Perfo rmance and Completion dated of even date herewith made by Dr. Hamid Kazemi (the "Guarantor") to the benefit of the Lender (as the same may be amended, modified or supplemented from time  to time, the "Guaranty"), (d) that certain Springing Guaranty (as the same may be amended,  modified or supplemented from time to time, the "Springing Guaranty") dated of even date herewith made by Sean Shahparast (the "Springing Guarantor"), (e) that certain Environmental Indemnity Agreement of even date herewith made by the Borrower and Guarantor for the benefit of Lender ( as the same may be amended, modified or supplemented from time to time, the "Indemnity"), (f)  that certain Assignment of Construction Contract (the "Assignment of Construction Contract"), (g ) that certain Collateral Assignment of Plans, Specifications and Permits (the "Plans Assignment"), (h) that certain Collateral Assignment of Interest Reserve Account dated of even date herewith ( the "Interest Reserve Account Assignment"), and (i) that certain Assignment of Contracts with re spect to the Property and the Construction (the "Contracts Assignment").  This Note, the Deed of Trust, the Assignment, the Indemnity, the Guaranty, the Springing Guaranty, the Assignment of Construction Contract, the Interest Reserve Account Assignment, the Contracts Assignment and any other document executed or delivered by the Borrower and/or any guarantor in connection h erewith shall be referred to herein as the "Loan Documents".

6.    Default.  An Event of Default shall occur hereunder if: (a) the Borrower shall fail to pay any amount due under this Note when due, (b) if a default or an "Event of Default" occurs under any of the Loan Documents and is not cured within any applicable grace period or (c) if a default or an "Event of Default" occurs under any document evidencing or securing any other loan or extension of credit from the Lender made to or guaranteed by Borrower or any Guarantor and is not cured within any applicable grace period.  Upon the occurrence of an Event of Default hereunder, the entire principal balance hereof, all accrued interest thereon and all other amounts payable hereunder and under the Loan Documents shall become immediately due and payable at the option of the Lender.  Any delay by the Lender in exercising or any failure of the Lender to  exercise the aforesaid option to accelerate with respect to an Event of Default shall not constitute a waiver of its right to exercise such option with respect to that or any subsequent Event of Default.  Acceleration of maturity, once claimed hereunder by the holder hereof may be rescinded, at such holder's option, by written acknowledgment to that effect, but the tender and acceptance of partial payment or partial performance alone shall not in any way affect or rescind such acceleration of maturity.  After the occurrence of an Event of Default, and until such Event of Default is cured, interest sh all accrue on all amounts outstanding hereunder at five percent (5%) plus the rate of interest then payable

2

hereunder from the date of such Event of Default (the "Default Rate").

7.    Late Charge.  The Borrower shall pay to the Lender a late charge equal to five percent (5%) of any amount due hereunder that is not received by the Lender within ten (10) days after the date on which such amount is due.

8.    Financial Statements.  Borrower shall deliver to the Lender annually: (i) no later than ninety (90) days after the end of the Borrower's fiscal year, current financial statements, including cash-flow statements, compiled by an independent Certified Public Accountant and certified by the Managing Member of the Borrower, in form and content satisfactory to the Lender, (ii) no later than fifteen (15) days after filing with the Internal Revenue Service, a copy of its federal income tax return and all schedules and exhibits thereto or a copy of its notification to extend the time within which to file its federal income tax return, (iii) annually, by February 1 of each year, a certified rent roll for the Property and (iv) within ten (10) business days after Lender's request therefor, such financial information with respect to Borrower and/or the Property as the Lender reasonably may require from time to time. Guarantor shall deliver to the Lender annually: (i) no later than ninety (90) days after the end of Guarantor's fiscal year, current financial statements, including cash-flow statements, compiled by an independent Certified Public Accountant, in form and content satisfactory to the Lender, (ii) no later than fifteen (15) days after filing with the Internal Revenue Service , a copy of its federal income tax return and all schedules and exhibits thereto or a copy of its notification to extend the time within which to file its federal income tax return, (iii) within ten (10) business days after Lender's request therefor, such financial information with respect to Riverdale International, Inc. as the Lender reasonably may require from time to time.  In the event that the Borrower or any Guarantor fails to provide Lender with any of the foregoing information as and when due, the Loan shall thereafter bear interest at the three percent (3%) above the interest rate then in effect under the Loan until such time as said information is provided. The foregoing right to increase the interest rate payable under the Loan Documents is and shall be in addition to any other rights and/or remedies of the Lender under the Loan Documents.

9.    Operating Accounts.  The Borrower shall maintain all operating accounts associated with the Property with the Lender throughout the term of the Loan.  In the event that the Borrower fails to maintain its operating accounts with the Lender, such failure shall constitute an Event of Default hereunder and the Loan shall thereafter bear interest at three percent (3%) above the interest rate then in effect under the Loan until such time as said default is cured. The foregoing right to increase the interest rate payable under the Loan Documents is and shall be in addition to any other rights and/or remedies of the Lender under the Loan Documents.

10.    Waiver; Extensions.  The Borrower hereby waives presentment, demand, notice of dishonor, protest and all other exemptions provided debtors.  The Borrower agrees that it shall remain liable for the payment hereof notwithstanding any agreement for the extension of the due date of any amount payable hereunder made by the Lender after the maturity thereof.

11.    Collection Costs and Expenses.  The Borrower shall pay all reasonable costs, fees and expenses (including court costs and attorneys' fees) incurred by the Lender in collecting or attempting to collect any amount that becomes due hereunder or in seeking legal advice with respect to such collection or an Event of Default.

12.    Notices.  All notices, requests, demands and other communications with respect hereto shall be in writing and shall be delivered by hand, sent via telecopier, sent prepaid by Federal Express (or a comparable overnight delivery service) or sent by the United States first-class mail,

certified, postage prepaid, return receipt requested, to the following addresses:

If to the Lender, to:

> The Adams National Bank
> 1130 Connecticut Ave., N.W., Suite 200
> Washington, D.C. 20036
> Attn: Lawrence R. Johnson, Vice President
> Telecopier No. (202) 835-3871

with a copy to:

> Friedlander, Misler, Sloan, Kletzkin & Ochsman, PLLC
> 1101 - 17th Street, N.W., Suite 700
> Washington, D.C. 20036-4704
> Attn:   Leonard A. Sloan, Esq.
> Telecopier No:   (202) 857-8343

If to the Borrower, to:

> 2142 O Street, L.L.C.
> 1700 Q Street, N.W.
> Washington, D.C. 20009
> Attn: Sean Shaparast, Managing Member
> Telecopier No. (202) 234-5582

with a copy to:

> Babak Movahedi, Esq.
> 1700 Q Street, N.W.
> Washington, D.C. 20009
> Telecopier No. (202) 234-5582

Any notice, request, demand or other communication delivered or sent in the manner aforesaid shall be deemed given or made (as the case may be) upon the earliest of (a) the date it is actually received, (b) on the business day after the day on which it is delivered by hand, (c) on the business day after the day on which it is properly delivered by Federal Express (or a comparable overnight delivery service), or (d) on the third (3rd) business day after the day on which it is deposited in the United States mail. Any party may change such party's address by notifying the other parties of the new address in any manner permitted by this paragraph 12.

13.     Severability. If any provision of this Note, or the application thereof to any person or circumstance, shall to any extent be invalid or unenforceable, the remainder of the provisions of this Note, or the application of such provision to other persons or circumstances, shall not be affected thereby, and each provision of this Note shall be valid and enforceable to the fullest extent permitted by law.

14.     Successors and Assigns. This Note shall be binding upon and inure to the benefit of the Borrower and the Lender and their respective successors and assigns; provided, however, that the Borrower may not assign or delegate its obligations hereunder without the prior written consent

of the Lender.

15.     Payments.  All payments due hereunder shall be made in immediately available funds.

16.     **Waiver of Jury Trial.  Borrower irrevocably waives, to the maximum extent not prohibited by law, any right Borrower may now or hereafter have to a trial by jury with respect to any litigation directly or indirectly arising out of or in connection with  this Note or any of the Loan Documents.**

17.     Offset.  If an Event of Default occurs under this Note or an Event of Default occurs under any other Loan Document, and such Event of Default is not cured within any applicable grace period, then the Lender shall have the right to offset any amounts due hereunder  against any deposit account now or hereafter maintained with the Lender by the Borrower.

18.     Commercial Purpose.  Borrower represents and warrants that the loan evidenced hereby was made and transacted solely for the purpose of carrying on a business or a n investment in real estate and that the obligation evidenced by this Note is an exempted transacti on under the Truth in Lending Act, 15 U.S.C. § 1601, et seq.

19.     Governing Law: Amendment.  This Note shall be governed by and  construed in accordance with the laws of the District of Columbia, without reference to conflict of laws principles. This Note may not be changed orally, but only by an agreement in writing signed by the parties against whom enforcement of any waiver, change, modification or discharge is soug ht.

IN WITNESS WHEREOF, the Borrower executed this Deed of Trust Note under seal as of the day and year first above written.

WITNESS:

Print Name: _____
[Seal]

**BORROWER**

2142 O Street, L.L.C.,
A District of Columbia limited liability company

By:     _____
        Sean Shahparast, Managing Member

THIS IS TO CERTIFY that this is the Note described in a certain Credit Line Deed of Trust, Security Agreement and Fixture Filing bearing even date herewith to Lawrence R. Johnson, Trustee, to secure THE ADAMS NATIONAL BANK, secured on real property located in the District of Columbia.

[SEAL]

_____
Notary Public

My commission Expires: _____

Babak Movahedi
Notary Public, District of Columbia
My Commission Expires 07-31-2007

C:\Documents and Settings\pien\Desktop\Bryan's Docs\2142 O ST\2nd\Note.doc

# EXHIBIT 2

## LOAN AGREEMENT

THIS **LOAN AGREEMENT** (as amended, modified or supplemented from time to time, the "**Agreement**"), dated as of the 30th day of September, 2004, by and between **THE ADAMS NATIONAL BANK** (the "**Lender**"), and **2142 O STREET, L.L.C.**, a District of Columbia limited liability company (the "**Borrower**"), recites and provides:

### RECITALS:

Pursuant to the terms of a commitment letter of even date herewith, from Lender to Borrower (as amended, modified or supplemented from time to time, the "**Commitment Letter**"), and subject to the terms of this Agreement, Lender agrees to make a certain loan to Borrower, as more particularly described in Section 1.1 below, for the refinance of the existing mortgage on certain real property located at 2142 O Street, NW, Washington, D.C., as more particularly described on **Exhibit A** attached hereto (the "**Real Estate**"), and to provide funds for the renovation and conversion to ten residential condominiums (each a "Unit") on the Property (collectively, the "**Construction**" or the "**Project**"). Lender and Borrower agree that the loan shall be made on the following terms, covenants and conditions.

### AGREEMENT

ACCORDINGLY, for and in consideration of the mutual covenants set forth in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are acknowledged, Lender and Borrower agree as follows:

### SECTION ONE
### THE LOAN

1.1    Amount and Purpose.  Subject to the terms and conditions of this Agreement, Lender agrees to make a loan to the Borrower in the amount of Two Million Five Hundred Eighteen Thousand Two Hundred Dollars and No Cents ($2,518,200.00) (the "**Loan**"). The proceeds of the Loan shall be used for the refinance of the existing mortgage on the Real Estate and for the Project. Borrower's obligation to repay the Loan shall be evidenced by a deed of trust note, in form and substance satisfactory to Lender, in the principal amount of Two Million Five Hundred Eighteen Thousand Two Hundred Dollars and No Cents ($2,518,200.00) made by Borrower and payable to the order of Lender (as amended, modified or supplemented from time to time, the "**Note**"). Notwithstanding anything in this Agreement to the contrary, the maximum principal amount of the Loan which may be outstanding at any one time shall not exceed the lesser of (i) Two Million Five Hundred Eighteen Thousand Two Hundred Dollars and No Cents ($2,518,200.00), (ii) eighty percent (80%) of the Project's "as is" value pursuant to the Appraisal (as defined herein), or (iii) seventy-five percent (75%) of the Project's "as complete" value pursuant to the Appraisal.

1.2    Guarantor.  Dr. Hamid Kazemi (the "**Guarantor**") shall guaranty the payment and performance of Borrower under the Note and the completion of the Construction, which guaranty shall be evidenced by an unlimited, unconditional, joint and several guaranty of payment, performance and completion made by Guarantor for the benefit of Lender, in form and substance satisfactory to Lender. Sean Shahparast (the "**Springing Guarantor**") shall enter into a Springing Guaranty in form and substance satisfactory to Lender.

1

1.3　　<u>Term</u>.　The term of the Note shall be twenty-four (24) months from the date thereof (the "**Maturity**").

1.4　　<u>Interest Rate</u>.

(a)　　Commencing on the closing of the Loan, the unpaid principal balance of the Note outstanding from time to time shall bear interest at the fluctuating interest rate equal to one-half percent (0.5%) (the "Margin") above an independent index (the "Index") which is the prime rate of interest published in the Money Rates section of the Eastern District edition of <u>The Wall Street Journal</u> on the date of closing, rounded upward, if the Lender deems necessary, to the next highest 0.125%.　The interest rate shall be adjusted as and when any change in the "Index" shall occur, which may be daily. If the Index becomes unavailable during the term of the Loan, Lender may, in its sole and absolute discretion, designate a comparable alternative index after notice to Borrower. Interest shall be calculated using a 360-day year, based upon the actual number of days for which the calculation is being made. Notwithstanding the above, in no event shall the interest rate be less than five percent (5.0%) per annum. Further notwithstanding the above, in the event Lender has not received, reviewed and accepted the final plans, specifications and budget for the renovation and conversion of the Property by (i) March 30, 2005, then the Margin shall be increased to two and one-half percent (2.5%) and (ii) June 30, 2005, then the Margin shall increase to five and one-half percent (5.5%).

(b)　　Notwithstanding anything herein to the contrary, it is not intended hereby to charge interest at a rate in excess of the maximum legal rate of interest permitted to be charged the Borrower under any applicable law, but if, nevertheless, interest in excess of such rate shall be paid, then the rate imposed shall be reduced to such maximum legal rate, and if from any circumstances the Lender shall receive as interest an amount which would exceed the highest lawful rate, such amount which would be deemed excessive interest shall be applied to the reduction of the unpaid principal balance and not to the payment of interest.

1.5　　<u>Fee</u>.　Borrower shall pay to Lender, and Lender has earned as of the date hereof, a loan origination fee of Twenty-Five Thousand One Hundred Eighty Two Dollars and No/100 Cents ($25,182.00) (the "**Loan Fee**").　On the date hereof, Borrower shall pay a portion of the Loan Fee in the amount of Twelve Thousand Five Hundred Ninety-One Dollars and No/100 Cents ($12,591.00). The remaining amount of the Loan Fee shall be paid in equal installments upon the closing of each of the Units.

1.6　　<u>Collateral</u>.　The performance of the Borrower's obligations hereunder and under the Note are secured by: (a) a first lien Deed of Trust, Security Agreement and Fixture Filing dated of even date herewith (as the same may be amended, modified or supplemented from time to time, the "**Deed of Trust**") from Borrower to Lawrence R. Johnson, as trustee, granting a first priority lien on certain property owned by Borrower and located at 2142 O Street, N.W., Washington, D.C., together with the improvements located thereon and all furniture, fixtures and equipment and all tangible or intangible property of the Borrower now or hereafter used in, arising out or relating to the construction, ownership, use, sale or operation of the Property and all proceeds of the foregoing (b) an Assignment of Leases, Rents and Profits dated of even date herewith made by Borrower for the benefit of the Lender (as the same may be amended, modified or supplemented from time to time, the "**Assignment of Leases**"), (c) an Environmental Indemnity Agreement dated of even date herewith made by Borrower and Guarantor (as hereinafter defined) for the benefit of Lender (as amended, modified or supplemented from time to time, the "**Environmental Indemnity**"), (d) a Guaranty of Payment, Performance and Completion (as amended, modified or supplemented from

2

time to time, the "**Guaranty**") of even date herewith made by Guarantor, (e) a Springing Guaranty of even date herewith made by Springing Guarantor, (f) an Assignment of all Sales Contracts and Earnest Money Deposits with respect to the Property and the Construction (the "**Assignment of Contracts**"); (g) an Assignment of the Plans, Specifications and Permits with respect to the Property and the Construction (the "**Plans Assignment**"); (h) an Assignment of the Construction Contract for the Construction (the "**Construction Contract Assignment**"); and (i) a Collateral Assignment of Interest Reserve Account of even date herewith made by Borrower to the benefit of Lender (as amended, modified or supplemented from time to time, the "**Interest Reserve Assignment**"). The Note, this Loan Agreement, the Deed of Trust, the Assignment of Leases, the Environmental Indemnity, the Guaranty, the Assignment of Contracts, the Plans Assignment, the Construction Contract Assignment, the Modular Construction Contract Assignment, the Interest Reserve Assignment and any other document executed or delivered by Borrower or any Guarantor in connection herewith shall be referred to herein as the "**Loan Documents**".

    1.7    <u>Partial Releases</u>.  Provided that: (i) Borrower has converted the Property to a condominium regime containing ten (10) residential units, such that each of the Units can be legally separately sold, (ii) the Borrower requests the release of one or more of the Units from the lien of the Deed of Trust prior to the repayment in full of the Loan, (iii) the sales price for such Unit is not less than four hundred and no/100 dollars ($400.00) per square foot of such Unit or Units and, and (iv) the sales contract with respect to such Unit or Units is satisfactory to the Lender in its discretion, then the Lender agrees to release the lien of the Deed of Trust with respect to any one or more Units (together with the corresponding undivided interest in the common elements of the Property), upon Borrower's written request, upon the following terms and conditions:

        (a)    the payment to Lender of the amount equal to the greater of: (i) one hundred percent (100%) of the Net Settlement Proceeds (as hereinafter defined) with respect to the Unit or Units to be released or (ii) four hundred and No/100 dollars ($400.00) per square foot of such Unit(s).  "Net Settlement Proceeds" shall be defined as the gross settlement proceeds less usual and customary costs and commissions approved by the Lender;

        (b)    the payment to Lender of the Loan Fee for such Unit; and

        (c)    no event of default shall then exist and be continuing under the Loan Documents, and no event which with the passage of time or the giving of notice, or both, would constitute an event of default under the Loan Documents shall then exist.

    1.8    <u>Loan-to-Value Ratio</u>. The Real Estate and any improvements thereon (collectively, the "**Property**") shall have a required "Loan to Value Ratio" of not greater than the lesser of (i) eighty percent (80%) of the lesser of the "as is" value and (ii) seventy-five percent (75%)the discounted "as complete" value of the Property (the "**MLTV**") based on an initial appraisal (to be engaged by Lender at the sole cost of Borrower) (the "**Appraisal**"), which appraisal shall be satisfactory to Lender in all respects, in Lender's sole absolute and unreviewable discretion. If at any time after the Loan closing, the loan-to-value ratio of the Loan to the Property shall exceed the MLTV on either the "as is" value or the discounted "as completed" value of the Property based on appraisals (to be engaged by Lender from time to time at the sole cost and expense of Borrower), which appraisals shall be satisfactory to Lender in all respects, in Lender's sole, absolute and unreviewable discretion, the Borrower shall within thirty (30) days after Lender's demand make a principal curtailment under the Loan so as to meet the MLTV ratio.

3

1.9     No Secondary Financing. Without the prior written consent of Lender, Borrower shall not incur or permit to exist any debt for borrowed funds, including investor loans, the deferred purchase price of goods or services or capitalized lease obligations, except for trade debt incurred in the ordinary course of business and the Loan. In addition, without the prior written consent of the Lender, Borrower shall not guarantee, endorse, become contingently liable upon or assume the obligation of any person, or permit any such contingent liability to exist, except by the endorsement of negotiable instruments for deposit or collection or similar transactions in the ordinary course of business. Furthermore, the Borrower shall not permit any subordinate liens against the Real Estate and shall pay, bond off or otherwise remove any mechanics' liens filed against the Property within thirty (30) days after such filing.

1.10     Interest Reserve Account. One Hundred Seventy Thousand and No/100 Dollars ($170,000.00) of the loan proceeds shall not be disbursed by Lender at the closing for the Loan and the aforesaid amount shall be reserved by Lender for the payment of interest on the Loan in accordance with the terms of an Interest Reserve Agreement until such reserve is exhausted; provided, however, notwithstanding any provision hereof to the contrary, Lender shall not be obligated to make any disbursements from the interest reserve if any default under the Loan Documents shall have occurred, and nothing contained herein shall be deemed to release or in any way relieve Borrower of its obligation under the Note evidencing the Loan to pay interest as therein provided. Each disbursement from the interest reserve shall constitute a disbursement of principal of the Loan and shall be added to the principal balance then outstanding.

1.11     Debt Coverage Ratio. Throughout the term of the Loan, , the Borrower shall maintain a Debt Service Coverage Ratio ("**DSCR**") of not less than 1.28 to 1 for any twelve (12) month period, tested annually, as calculated by the Lender, in its sole discretion. The "DSCR" shall be defined as the Borrower's net operating income based upon commercially reasonable industry expenses divided by annual principal and interest payments. If the DSCR falls below the required ratio for any twelve month period, it shall constitute an event of default under the Loan Documents; provided, however, in addition to any other remedies the Lender may have, the Lender at the Lender's sole option may: (i) receive one hundred percent (100%) of the net cash flow of the Property or (ii) within thirty (30) days after written demand therefore, receive a principal curtailment sufficient to reduce the balance of the Loan to conform with the required DSCR. In the event that the Lender receives one hundred percent (100%) of the net cash flow of the Property and thereafter Borrower maintains the required DSCR for a period of one hundred eighty (180) consecutive days, Lender shall terminate the requirement that one hundred percent (100%) of the net cash flow be paid to Lender. Any cash flow in excess of any required payments under the Loan Documents paid to Lender pursuant to the foregoing, shall be held by Lender as additional collateral for the Loan or applied to the principal due under the Note in Lender's sole discretion.

4

## SECTION TWO
## PAYMENTS, COMPUTATIONS, FEES AND CHARGES

2.1     Payments.  Payments of interest only on the outstanding balance shall be due and payable commencing thirty (30) days after the Loan closing and continuing on the same day of each and every month until Maturity.  At Maturity, the then outstanding principal balance and accrued interest not yet paid shall be due and owing.  All payments due with respect to this Agreement or the Loan shall be made in immediately available funds to Lender at such place as designated by Lender from time to time.  Lender is authorized, but shall be under no obligation, to charge any deposit account maintained by Borrower with Lender or any affiliate of Lender for any payments due to Lender with respect to this Agreement or the Loan.  Payments shall be applied, at Lender's sole discretion, first to accrued interest, next to late charges and costs, if any, and then to principal.

2.2     Late Charges.  If any payment due under the Note is not made within ten (10) days of its due date, Borrower shall pay to Lender a late charge equal to five percent (5%) of the amount of such payment.

2.3     Default Rate.  If any payment due under the Note is not made within ten (10) days of the date due, including principal due by reason of acceleration of the Note, the interest which accrues on the Note shall be increased to an amount equal to the rate of interest then in effect under the Note plus five percent (5%) per annum or the maximum rate permitted by law, until such time as the default has been cured.

2.4     Computations.  Interest and fees on the Loan shall be computed on the basis of a year of three hundred sixty (360) days and actual days elapsed.

2.5     Operating Accounts.  The Borrower shall maintain all operating accounts associated with the Property, including accounts for security deposits and other rental accounts, with the Lender throughout the term of the Loan.  In the event that the Borrower fails to maintain its operating accounts with the Lender, such failure shall constitute an Event of Default hereunder and the Loan shall thereafter bear interest at three percent (3%) above the interest rate then in effect under the Loan until such time as said default is cured.  Should the Lender choose to enforce this provision, this monthly payment due under the Note shall be increased accordingly until such time as Borrower is in full compliance with this section. The foregoing right to increase the interest rate payable under the Loan Documents is and shall be in addition to any other rights and/or remedies of the Lender under the Loan Documents.


## SECTION THREE
## CONDITIONS

In addition to any other conditions stated in this Agreement, the following conditions must be satisfied prior to Lender making the first disbursement and any subsequent disbursements under this Agreement.  In the event such condition is not satisfied at the time Lender makes such disbursement, such conditions must be satisfied prior to Lender making any subsequent disbursements under this Agreement.

        (a)     Loan Documents.  Receipt by Lender of appropriately completed and duly executed originals of all of the Loan Documents;

5

(b)     <u>Organizational Documents</u>.  Borrower shall supply (i) a currently certified copy of its Articles of Organization, and all amendments thereto; (ii) evidence satisfactory to Lender and its counsel that Borrower is in good standing in the jurisdiction where organized and qualified to do business in every jurisdiction in which the nature of its business(es) or its property(ies) makes such qualification necessary; (iii) resolutions of the members of Borrower authorizing the due execution and delivery of the Loan Documents to which Borrower is a party; and (iv) a certified true copy of Borrower's Operating Agreement, and all amendments thereto.

(c)     <u>Insurance</u>.  Receipt by Lender of a copy of a complete and fully paid policy or policies of casualty and fire insurance in an amount not less than the replacement cost of the improvements and personalty located on the Real Estate, providing full extended coverage, including the so-called "All Risk of Physical Loss" coverage with a collapse endorsement, and Builders' Risk coverage on a completed value, non-reporting form with permission to complete and occupy, naming Lender as an additional insured and as mortgagee, in a manner satisfactory to Lender and Lender's counsel, and a policy or policies of comprehensive public liability insurance naming Lender as an additional insured thereunder in an amount not less than Two Million Dollars and No Cents ($2,000,000.00) in the aggregate, with not less than One Million Dollars and No Cents ($1,000,000.00) per occurrence; Borrower shall also cause workers' compensation and disability insurance to be maintained in amounts as required by law, and employer's liability insurance; all insurance policies shall be issued in such amounts, and by an insurance company or companies acceptable to lender; in any event, the amount of all insurance shall be sufficient to prevent any co-insurance contribution on any loss, with each policy providing for a thirty (30) day prior written notice of cancellation, amendment or alteration;

(d)     <u>Operating Account</u>.  Establishment of the Borrower's Operating Accounts with the Lender;

(e)     <u>Interest Reserve Account</u>.  Establishment and funding of Borrower's Interest Reserve Account with Lender;

(f)     <u>Real Estate Documents</u>.  Lender shall have received and approved, in its sole discretion, the following:

(i)     <u>Appraisal</u>.  An appraisal of the Real Estate, prepared by an appraiser acceptable to Lender, in form and content acceptable to Lender, conforming to all regulatory and internal appraisal guidelines applicable to or established by Lender, in its sole, absolute, nonreviewable discretion, which appraisals shall be in form and content and reflecting a value of the Property acceptable to Lender, in its sole, absolute, nonreviewable discretion;

(ii)     <u>Title Insurance</u>.  A commitment for title insurance (the "**Title Commitment**") insuring the first priority lien of the Deed of Trust, containing no exceptions unacceptable to Lender, issued in the name of Lender by a title company acceptable to Lender and in an amount equal to the aggregate principal amount of the Note.  Such Commitment and the title policy issued pursuant thereto (the "**Title Policy**") shall reflect that all requirements for the issuance of the Title Policy have been satisfied, and shall contain such other endorsements or coverages as Lender may require;

6

(iii)    <u>Survey</u>. A current ALTA survey (or other documentation acceptable to Lender) and legal description of the Real Estate satisfactory to Lender from a registered land surveyor of the District of Columbia, which survey shall show all easements, rights of way and other matters of record, shall locate all proposed improvements on the Real Estate and shall generally show a state of facts acceptable to Lender and contain a surveyor's certificate satisfactory to the Lender;

(iv)    <u>Environmental Audit</u>.  A Phase I environmental audit of the Real Estate prepared by an environmental consulting firm acceptable to Lender, in its sole discretion, confirming that the Real Estate is in compliance with all applicable environmental laws;

(v)    <u>Flood Hazard</u>.  Evidence that no part of the existing or proposed improvements to form or forming a part of the Real Estate is located in a special flood hazard area, or provide flood hazard insurance in such amounts and with such insurance companies and on such terms as Lender shall require in its sole and absolute discretion;

(vi)    <u>Zoning</u>.  Such written evidence as Lender may require to the effect that the Property has been zoned for purposes consistent with the uses contemplated herein beyond any possibility of appeal and to the effect, further, that there are no pending proceedings, either administrative, legislative or judicial which would in any manner adversely affect the status of the zoning with respect to the Property or any part thereof;

(vi)    <u>Leases</u>.  Copies of all existing leases of the Real Estate, together with tenant estoppel certificates and subordination and attornment agreements for each tenant;

(v)    <u>Public Utilities</u>.  Such written evidence as the Lender may require to the effect that sanitary sewer, water, electric, gas, telephone and other public utilities are available and adequate to serve the Property for purposes consistent with the contemplated use of the Property; and

(vi)    <u>Real Estate Taxes and Water Liens</u>.  Such written evidence as Lender may require that all real estate taxes and water bills have been paid current as of the date of closing.

(g)    <u>Sales Agreements</u>.  A copy of any and all sales agreements for the Property or any part thereof, satisfactory to Lender and Lender's counsel in form and substance;

(h)    <u>Borrower's Attorney Opinion</u>.  An opinion of Borrower's counsel, in form satisfactory to Lender and Lender's counsel;

(i)    <u>No Default</u>.  No event shall have occurred and be continuing that constitutes an Event of Default (as defined below);

(j)    <u>Representations</u>.  All representations and warranties contained in this Agreement shall be true and correct in every material respect as of the date of the first disbursement and each and every subsequent disbursement under this Agreement;

7

(k)  <u>Satisfactory Documents</u>.  All documents delivered pursuant to this Agreement must be in form and substance satisfactory to Lender and its counsel, and all legal matters incident to this Agreement must be satisfactory to Lender's counsel;

(l)  <u>Fees</u>.  Receipt by Lender of the Loan Fee;

(m)  <u>Draw Schedule</u>.  A draw schedule setting forth the projected schedule for progress of the Construction in such form and containing such details as Lender shall require; and

(n)  <u>Construction Documents</u>.  Lender shall have received and approved, in its sole discretion, the following:

(a)  <u>Permits</u>.  Copies of any and all building and similar permits required in connection with the Construction, together with such evidence as the Lender may require to the effect that all fees for such permits have been paid.  Satisfactory evidence shall be submitted to Lender of the receipt of site plan approval (and Borrower shall provide Lender with a copy of the site plan), if required, and that any other governmental approvals necessary for the Construction have been obtained. Lender shall also receive satisfactory evidence that all applicable safety, ecological and environmental laws and any other codes or regulations affecting the Construction and/or proposed use of the Real Estate have been complied with;

(b)  <u>Plans and Specifications</u>.  A complete copy of the final plans and specifications (the "<u>Plans and Specifications</u>") for the Construction, together with such evidence as the Lender may require to the effect that such Plans and Specifications have been approved by all governmental and quasi-governmental authorities having or claiming jurisdiction, which Plans and Specifications shall be satisfactory to the Lender in all respects.  Lender's review of the Plans and Specifications is solely for the benefit of Lender, and Lender's approval thereof shall not be deemed in any respect to be a representation or warranty, expressed or implied, that the Construction will be structurally sound, have a value of any particular magnitude or otherwise satisfy a particular standard.  Borrower shall assign to Lender, effective on a default under the Loan Documents, the Plans and Specifications and Permits, which assignment shall be in form and content substantially similar to the Assignment attached hereto and incorporated herein by reference as **Exhibit B**;

(c)  <u>Construction Inspector</u>.  A Lender approved construction consulting firm (the "**Construction Inspector**") shall have completed its review of the plans and specifications and construction budget and found no matters unacceptable to Lender in its reasonable discretion.  In addition, Lender shall have contracted with the Construction Inspector to review and approve all draw requests which review shall be performed at Borrower's cost;

(d)  <u>Trade Payment Breakdown - Construction Schedule</u>.  A breakdown of total costs under the Loan (the Budget attached as <u>Exhibit C</u>), containing reasonable details of amounts anticipated to be payable for each category of work to be performed and materials to be supplied in connection with the Construction, and a projected schedule for the progress of such Construction, all in such form and containing such details as the Lender shall require;

8

(e)    <u>General Contractor / Construction Contractor</u>.  The general contractor and the construction contract shall be subject to the Lender's approval and the construction contract shall be a fixed price contract.  In addition, the construction contract shall be subject to Lender's approval, and shall be assigned to Lender, effective on a default under any of the Loan Documents, which assignment shall be in form and content substantially similar to the Construction Contract Assignment attached hereto and incorporated herein by reference as **Exhibit D**.  The general contractor shall consent to such assignments and agree, in the event of any such default, to continue performance of the contract for Lender, if Lender so requests, such Acknowledgment and Agreement of the General Contractor shall be in the form of **Exhibit E**, attached hereto and incorporated herein by reference.  In addition, the general contractor shall maintain workers' compensation and disability insurance in amounts required by law, and employer's liability insurance.  The general contractor shall furnish one hundred percent (100%) labor and material performance and payment bond naming the Lender as dual oblige, which bond shall be satisfactory to the Lender and shall guaranty completion of the proposed improvements in accordance with the construction contract; and

(f)    <u>Architect's Certificate</u>.  A certificate by Borrower's architect to the effect that the Construction, if completed in accordance with the Plans and Specifications, will comply with all federal, state and local laws, statutes, ordinances, regulations, rules or other laws applicable to the Real Estate and the Construction, which Certificate shall be in form and content substantially similar to the Architect's Certificate attached hereto and incorporated herein by reference as **Exhibit F**.  The Architect's contract shall be subject to Lender's approval in its sole discretion.

SECTION FOUR
**ADVANCES FOR THE CONSTRUCTION**

Loan disbursements for the Construction shall be governed and conditioned on the following:

(a)    The Construction shall be performed by the Borrower in strict accordance with all applicable (whether present or future) laws, ordinances, rules, regulations, requirements and order of any governmental or regulatory authority having or claiming jurisdiction.  The Construction shall be completed in a manner so as not to encroach upon any easement or right-of-way, or upon the land of others.  The Construction shall be wholly within all applicable building restriction lines and set-backs, however established, and shall be in strict accordance with all applicable use or other restrictions and the provisions of any prior declarations, covenants and zoning ordinances and regulations.

(b)    Borrower shall submit to Lender or its inspecting engineer, at Lender's discretion, such information as may be requested by Lender or its inspecting engineer to verify the Construction costs which are to be incurred in connection with the Construction.  Lender shall not be obligated to authorize disbursement of loan proceeds with respect to the Construction for an amount in excess of the Construction costs to be incurred in connection therewith as verified by Lender or its inspecting engineer pursuant to the provisions of the preceding sentence.  The funding of each draw request is subject to an inspection and approval by an authorized officer of the Lender and Lender's inspecting engineer.  Sufficient time shall be required between the submission of the Project Architect's certified draw

9

request and the actual advances in order to permit on-site inspection by an authorized officer of the Lender and Lender's inspecting engineer.

(c)    The Loan proceeds will be advanced in installments as the work progresses in accordance with the terms of this Agreement to finance the Construction in accordance with the Plans and Specifications, but no more often than once each thirty (30) days, provided that Lender is satisfied that the undisbursed amount of the Loan will be sufficient to complete the work in accordance with the Plans and Specifications, costs estimates, approved change orders on file with the Lender and pay or provide for all reasonably anticipated Construction costs through the Maturity of the Loan and the Lender is satisfied that the Borrower has paid all costs incurred in connection with the Construction prior to the date of the requested advance. In the event Lender determines that the undisbursed portion of the Loan is insufficient to complete the Construction in such manner as Lender may require, the Borrower shall, prior to any further disbursements, provide such funds necessary to complete the Construction. At the time of each advance under the Loan, the total Loan proceeds unadvanced shall be equal to the sum of the following:

(i)    "Retainage" in the amount of five percent (5%) of the cost of labor and materials brought into Construction and eligible for payment; and

(ii)    An amount, in the reasonable opinion of Lender, sufficient to pay the remaining cost of completing the Construction in accordance with the Plans and Specifications.

Further, each advance shall be subject to a five percent (5%) hold-back or retainage by Lender for all direct construction costs approved by Lender or Lender's inspecting engineer, at Lender's discretion, in accordance with Section 5.1(b) above.

(d)    Each advance under the Loan shall be conditioned upon receipt of (i) a written certification, on AIA forms G-702 and G-703 (or equivalent forms acceptable to Lender, in its sole discretion), by the Project Architect and the Borrower, that the work which is the basis of the requested advance was completed in accordance with the approved Plans and Specifications and within the cost estimates approved by Lender (or such adjustments of cost estimates of line items as shall be required and approved by Lender, provided that sufficient funds to complete the Construction will be available under such adjusted estimates), to the satisfaction of Lender, and (ii) evidence that all then necessary certificates required to be obtained from any board, agency or department (government or otherwise) have been obtained. All documents required to be submitted to Lender as a condition of each disbursement shall be on standard AIA forms and shall be furnished to Lender at the address designated by Lender from time to time.

(e)    Lender shall also require notice of continuation or an endorsement to the title insurance policy theretofore delivered, indicating that since the last preceding advance there has been no change in the status of title and no title exceptions not theretofore approved by the Lender and bringing the policy to the date of the advance then being made and increasing the coverage of the policy by an amount equal to the advance then being made if the policy does not by its terms provide for such an increase.

(f)    Before making any advance of Loan proceeds, the Lender may require the Borrower to obtain from any contractor or materialmen it may engage in connection with the Construction, acknowledgements of payment and releases of liens and rights to claim liens,

if applicable, down to the date of the last preceding advance and concurrently with the final advance. All such acknowledgements and releases shall be in the form and substance satisfactory to the Lender.

(g)     The Lender shall not be obligated to make any advances of Loan proceeds hereunder unless, in the reasonable judgment of the Lender, all work completed at the time of the application for advance has been performed in a good and workmanlike manner, and all materials and fixtures usually furnished and installed at that stage of the Construction have been furnished and installed, no default which has not been cured has occurred under the Loan Documents, and there has been no occurrence that with the passage of time or the giving of notice would constitute an Event of Default.

(h)     Upon default hereunder, Lender, at its option, may make any and all advances, or any part thereof, directly to the contractors or subcontractors against requisitions for payment under the construction contract or the respective contracts or subcontracts, as the case may be; the execution of this Agreement by Borrower shall and does constitute an irrevocable direction and authorization to so advance funds. All payments made pursuant to the foregoing shall be made within the scope of the respective contracts.

(i)     Lender, at its option, may make any advance to itself for the payment of interest or any and all other reasonable costs incurred by Lender in connection with or pursuant to the Loan Documents, and the execution of this Agreement by Borrower shall and does constitute an irrevocable direction and authorization to so advance funds.

(j)     All sums not advanced pursuant to paragraphs 5.1(h) and 5.1(i) hereof shall be advanced, upon approval by Lender, directly into Borrower's Primary Operating Account.

(k)     Within ten (10) days of completion of the laying of the foundation for each and every building as set forth on the Plans and Specifications, Borrower shall provide Lender with a foundation survey satisfactory to Lender, in Lender's sole and absolute discretion.

(l)     Lender shall not be obligated to make the final advance of Loan proceeds hereunder unless (i) the Lender's inspecting engineer has certified to the Lender on standard AIA forms that the work is complete in accordance with the Plans and Specifications; (ii) the Lender has received evidence satisfactory to it that all work requiring inspection by governmental or regulatory authorities having or claiming jurisdiction has been duly inspected and approved by such authorities and by any rating or inspection organization, bureau, association, or office having or claiming jurisdiction; and (iii) the Lender has received evidence satisfactory to it that requisite certificates of occupancy for permanent occupancy have been validly issued and that completion of the Construction has occurred free and clear of all mechanics' or materialmens' liens and any bills or claims for labor, materials and services in connection with the completion of the Construction. All fees and costs of the inspecting engineer incurred by the Lender shall be paid by the Borrower at its sole expense.

(m)     Under no circumstances shall Lender advance any sums for any building materials to be used in connection with the Construction stored or to be stored off-site. Failure to store materials funded under the Loan on-site shall constitute an immediate default hereunder.

11

## SECTION FIVE
## <u>REPRESENTATIONS AND WARRANTIES</u>

In order to induce Lender to extend credit to Borrower, Borrower represents and warrants as follows:

5.1    <u>Organization</u>.  Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the District of Columbia, and is duly qualified as a foreign limited liability company and in good standing under the laws of each other jurisdiction in which such qualification is required.

5.2    <u>Execution and Delivery</u>.  Borrower has the power, and has taken all the necessary actions, to execute and deliver and perform its obligations under the Loan Documents, and the Loan Documents, when executed and delivered, will be binding obligations of Borrower, enforceable in accordance with their terms.

5.3    <u>Power</u>.  Borrower has the power and authority to own its properties and to carry on its business as now being conducted.

5.4    <u>Financial Statements</u>.  All financial statements and information delivered to Lender for the benefit of Borrower and/or Guarantor were prepared in accordance with generally accepted accounting principles, are correct and complete in all material respects, and present fairly the financial conditions, and reflect all known liabilities, contingent and otherwise, of Borrower and/or Guarantor as of the dates of such statements and information, and since such dates no material adverse change in the assets, liabilities, financial condition, business or operations of Borrower or Guarantor has occurred.

5.5    <u>Taxes</u>.  All tax returns and reports of Borrower and Guarantor required by law to be filed have been duly filed, and all taxes, assessments, other governmental charges or levies (other than those presently payable without penalty or interest and those that are being contested in good faith in appropriate proceedings) upon Borrower and Guarantor and upon any of their respective properties, assets, income or franchises, that are due and payable have been paid.

5.6    <u>Litigation</u>.  There is no action, suit or proceeding pending or, to the knowledge of Borrower and Guarantor, threatened against or affecting Borrower or Guarantor that, either in any case or in the aggregate, may result in any material adverse change in the business, properties or assets or in the condition, financial or otherwise, of Borrower or Guarantor, or that may result in any material liability on the part of Borrower or Guarantor, or that questions the validity of any of the Loan Documents or any action taken or to be taken in connection with the Loan Documents.

5.7    <u>No Breach</u>.  The execution and delivery of the Loan Documents, and compliance with the provisions of the Loan Documents, will not conflict with or violate any provisions of law or conflict with, result in a breach of, or constitute a default under the Articles of Organization or Operating Agreement of the Borrower, any judgment, order or decree binding on Borrower, or any other agreements to which Borrower is a party.

5.8    <u>No Defaults</u>.  To the best of Borrower's knowledge, Borrower is not in default with respect to any debt, direct or indirect.

12

5.9  <u>Compliance</u>.  The Borrower is in compliance in all material respects with all applicable laws and regulations, including, without limitation, the Employee Retirement Income Security Act of 1974, as amended ("ERISA").

5.10  <u>Approvals</u>.  No authorizations, approvals or consents of, and no filings and registrations with, any governmental or regulatory authority or agency are necessary for the execution, delivery or performance of the Loan Documents by Borrower

5.11  <u>Title to Assets</u>.  Borrower has good and marketable title to all of its assets, subject only to the liens and security interests permitted by this Agreement.

5.12  <u>Use of Proceeds</u>.  The proceeds of the Loan shall be used only for the purposes described in this Agreement.  The proceeds of the Loan shall not be used to purchase or carry any margin stock, as such term is defined in Regulation U of the Board of Governors of the Federal Reserve System.

**SECTION SIX**
**COVENANTS OF BORROWER**

In consideration of credit extended or to be extended by Lender, Borrower covenants and agrees as follows:

6.1  <u>Financial Information</u>.  Borrower shall deliver to the Lender annually: (i) no later than ninety (90) days after the end of the Borrower's fiscal year, current financial statements, including cash-flow statements, compiled by an independent Certified Public Accountant and certified by the Managing Member of the Borrower, in form and content satisfactory to the Lender, (ii) no later than fifteen (15) days after filing with the Internal Revenue Service, a copy of its federal income tax return and all schedules and exhibits thereto or a copy of its notification to extend the time within which to file its federal income tax return, (iii) annually, by February 1 of each year, a certified rent roll for the Real Estate and (iv) within ten (10) business days after Lender's request therefor, such financial information with respect to Borrower and/or the Real Estate as the Lender reasonably may require from time to time.  Guarantor shall deliver to the Lender annually: (i) no later than sixty (60) days after the end of Guarantor's fiscal year, current financial statements, including cash-flow statements, compiled by an independent Certified Public Accountant and certified by the Guarantor, in form and content satisfactory to the Lender, (ii) no later than fifteen (15) days after filing with the Internal Revenue Service, a copy of its federal income tax return and all schedules and exhibits thereto or a copy of its notification to extend the time within which to file its federal income tax return, (iii) within ten (10) business days after Lender's request therefor, such financial information with respect to Guarantor as the Lender reasonably may require from time to time.  In the event that the Borrower or any Guarantor fails to provide Lender with any of the foregoing information as and when due, the Loan shall thereafter bear interest at three percent (3%) above the interest rate then in effect under the Loan until such time as said information is provided. The foregoing right to increase the interest rate payable under the Loan Documents is and shall be in addition to any other rights and/or remedies of the Lender under the Loan Documents.

6.2  <u>Taxes</u>.  Borrower shall pay or cause to be paid all taxes, assessments or governmental charges lawfully levied or imposed on or against it and its properties prior to the time it becomes delinquent; provided that this covenant shall not apply to any tax, assessment or charge that is being contested in good faith and with respect to which adequate reserves as determined in good faith by Borrower and approved by Lender have been established and are being maintained.

13

Borrower shall deliver to Lender within ten (10) days of the date due, evidence of payment of all real estate taxes, water bills and special assessments covering the Real Estate and the improvements thereon.

6.3    Compliance with Laws.    Borrower shall comply with all applicable laws and regulations, including, without limitation, ERISA.

6.4    Maintain Existence.    Borrower shall maintain its existence in good standing, maintain and keep its properties in good condition (ordinary wear and tear, fire or other casualty excepted), maintain adequate insurance for all of its properties with financially sound and reputable insurers. Borrower shall remain in the same line of business as it is in on the date of this Agreement and shall not enter into any new lines of business without the prior written consent of Lender. Borrower shall not amend or modify any of its organizational documents without the prior written consent of Lender which shall not be unreasonably withheld.

6.5    Notices.    As soon as it has actual knowledge, Borrower shall notify Lender of (a) the institution or threat of any material litigation or condemnation or administrative proceeding of any nature involving Borrower or any Guarantor, (b) any pending or threatened labor action (strike, walk-out, etc.) against Borrower or the General Contractor, and (c) the occurrence of an Event of Default under this Agreement, or any event that, with the giving of notice or lapse of time, or both, would constitute an Event of Default.

6.6    Books and Records.    Borrower shall maintain complete and accurate books of account and records. The principal books of account and records shall be kept and maintained at 1700 Q Street, N.W., Washington, D.C. 20009. Borrower shall not remove such books of account and records without giving Lender at least thirty (30) days' prior written notice. Borrower, upon reasonable notice from Lender, shall permit Lender, or any officer, employee or agent designated by Lender, to examine the books of account and records maintained by Borrower, and agrees that Lender or such officer, employee or agent may audit and verify the books and records. Borrower shall reimburse Lender for any expenses incurred by Lender in connection with any audits, but no more often than once annually. All accounting records and financial reports furnished to Lender pursuant to this Agreement shall be maintained and prepared in accordance with GAAP.

6.7    Liens.    Borrower shall not create, incur, assume or permit to exist any mortgage, deed of trust, assignment, pledge, lien, security interest, charge or encumbrance, including, without limitation, the right of a vendor under a conditional sale contract or the lessor under a capitalized lease (collectively, the "Liens") of any kind or nature in or upon any of the assets of Borrower, except:

(a)    Liens created or deposits made that are incidental to the conduct of the business of Borrower, that are not incurred in connection with any borrowing or the obtaining of any credit and that do not and will not interfere with the use by Borrower of any of its assets in the normal course of its business or materially impair the value of such assets for the purpose of such business; and

(b)    Liens securing the Indebtedness.

6.8    Debt.    Without the prior written consent of Lender, Borrower shall not incur or permit to exist any debt for borrowed funds, the deferred purchase price of goods or services or capitalized lease obligations, except for (a) trade debt incurred in the ordinary course of business, and (b) the Indebtedness.

14

6.9    Contingent Liabilities.  Without the prior written consent of Lender, Borrower shall not guarantee, endorse, become contingently liable upon or assume the obligation of any person, or permit any such contingent liability to exist, except by the endorsement of negotiable instruments for deposit or collection or similar transactions in the ordinary course of business.

6.10    Sale of Assets.  Without the prior written consent of Lender, Borrower shall not sell, lease, assign or otherwise dispose of any of the assets of Borrower except for (a)  sales in the ordinary course of business, (b) the disposition of assets that are no longer needed or useful in Borrower's business, and (c) assets which have been removed and replaced.

6.11    Mergers and Acquisitions.  Without the prior written consent of Lender, Borrower shall not merge or consolidate with, or acquire all or substantially all of the assets, stock, partnership interests or other ownership interests of, any other person.

6.12    Loan and Advances.  Without the prior written consent of Lender, Borrower shall not make any loan or advance to any affiliate, director, officer or employee of Borrower,  or any other person, except for the creation of accounts receivable in the ordinary course of business on terms that are no less favorable than would apply in an arm's-length transaction.

6.13    Subsidiaries and Joint Ventures.  Without the prior written consent of Lender, Borrower shall not form any subsidiary, become a general or limited partner in any partnership or become a party to a joint venture.  If Lender grants its consent to the formation or acquisition of a subsidiary by Borrower, Borrower shall cause each such subsidiary to perform and observe all of the covenants contained in this Agreement.

6.14    Affiliates.  Without the prior written consent of Lender, Borrower shall not engage in business with any affiliate of Borrower except in the ordinary course of business and  on terms that are no less favorable to Borrower than would apply in an arm's-length transaction.

6.15    Construction Commencement.  Borrower shall commence the Construction within nine (9) months after the date hereof and shall diligently pursue and proceed with the Construction to completion within the parameters of this Agreement, and Borrower shall not suspend or abandon the Construction for a period of more than twenty (20) days.

6.16    Budget Changes.  Borrower shall not amend, alter or supplement the Construction Budget without the express written approval of Lender, which approval shall be in  Lender's sole discretion. Notwithstanding the foregoing, Borrower shall be entitled to move dollars from one line item in the budget to another so long as the total cost of completion remains the same.

6.17    Conversion.  The Borrower shall take all steps necessary to validly and legally convert the Property into a condominium regime with ten (10) residential Units. The condominium documents, including without limitation, the condominium declaration and by-laws, shall be acceptable to the Lender in its discretion. From time to time, upon the Lender's request, the Borrower shall provide Lender with evidence that Borrower has complied with any applicable requirements of the condominium documents and any applicable laws.

## SECTION SEVEN
## <u>DEFAULT AND REMEDIES</u>

7.1    <u>Events of Default</u>. Each of the following shall constitute an "Event of Default" under this Agreement:

(a)    <u>Failure to Pay</u>.  If Borrower fails to make when due any installment or other payment owing to Lender under the terms of this Agreement, the Note or any other Loan Documents;

(b)    <u>Failure to Give Notices</u>.  If Borrower fails to give Lender any notice required by Section 7.5 of this Agreement within thirty (30) days after it has actual knowledge of the event giving rise to the obligation to give such notice;

(c)    <u>Failure to Permit Inspections</u>.  If Borrower refuses to permit Lender to inspect its books and records in accordance with the provision of Section 7.6, or failure to permit Lender to inspect the Real Estate;

(d)    <u>Failure to Observe Covenants</u>.  If Borrower fails to perform or observe any term, covenant, warranty or agreement contained in this Agreement, in the other Loan Documents and such failure shall continue for a period of thirty (30) days after written notice of such failure has been given to Borrower by Lender; provided, however, Borrower shall be allowed fifteen (15) additional days if Lender determines that Borrower is diligently pursuing performance or observance;

(e)    <u>Defaults under Loan Documents</u>.  If an Event of Default shall occur under the Note or any other Loan Document and shall not be cured within any applicable grace period;

(f)    <u>Breach of Representation</u>.  Discovery that any representation or warranty made or deemed made by Borrower or Guarantor in this Agreement or in any other Loan Document, or any statement or representation made in any certificate, report or opinion delivered pursuant to this Agreement or other Loan Document or in connection with any borrowing under this Agreement was materially untrue when made or deemed made, or is breached in any material respect;

(g)    <u>Voluntary Bankruptcy</u>.  If Borrower makes an assignment for the benefit of creditors, files a petition in bankruptcy, petitions or applies to any tribunal for any receiver or any trustee of Borrower or any substantial part of the property of Borrower, or commences any proceeding relating to Borrower under any reorganization, arrangement, composition, readjustment, liquidation or dissolution law or statute of any jurisdiction, whether in effect now or after this Agreement is executed;

(h)    <u>Involuntary Bankruptcy</u>.  If, within sixty (60) days after the filing of a bankruptcy petition or the commencement of any proceeding against Borrower seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future statute, law or regulation, the proceeding shall not have been dismissed, or, if within sixty (60) days, after the appointment, without the consent or acquiescence of Borrower, of any trustee, receiver or liquidator of Borrower or all of any substantial part of the properties of Borrower, the appointment shall not have been vacated;

16

(i)    <u>Cross Default</u>. If a default occurs under any present or future obligations, whether direct or contingent, of Borrower or any Guarantor to Lender or any other creditor;

(j)    <u>Material Adverse Change</u>. A material adverse change occurs in the financial or business condition of Borrower or Guarantor;

(k)    <u>Judgment</u>. If a judgment, attachment, garnishment or other process is entered against Borrower or any Guarantor and is not vacated or bonded within thirty (30) days after entry; or

(l)    <u>Dissolution</u>. The dissolution, liquidation or termination of existence of Borrower.

7.2    <u>Remedies</u>. Upon the occurrence of an Event of Default (a) Lender, at its option, by written notice to Borrower, may declare all Indebtedness to Lender to be immediately due and payable, whether such Indebtedness was incurred prior to, contemporaneous with or subsequent to the date of this Agreement and whether represented in writing or otherwise, without presentment, demand, protest or further notice of any kind, and (b) Lender may exercise all rights and remedies available to it under the Loan Documents and applicable law. Borrower agrees to pay all costs and expenses incurred by Lender in enforcing any obligation under this Agreement or the other Loan Documents, including, without limitation, attorneys' fees. No failure or delay by Lender in exercising any power or right will operate as a waiver of such power or right, nor will any single or partial exercise of any power or right preclude any other future exercise of such power or right, or the exercise of any other power or right.

7.3    <u>Borrower to Pay Fees and Charges</u>. Borrower shall pay all fees and charges incurred in the procuring, making and enforcement of the Loan, including without limitation, the reasonable fees and disbursements of Lender's attorneys, charge for appraisals, the fee of Lender's inspector, fees and expenses relating to examination of title, title insurance premiums, surveys, and mortgage recording, documentary, transfer or other similar taxes and revenue stamps, loan extension fees, if any, and Lender's commitment fees as set forth in the Commitment.

## SECTION EIGHT
## <u>MISCELLANEOUS</u>

8.1    <u>Defined Terms</u>. Each accounting term used in this Agreement, not otherwise defined, shall have the meaning given to it under GAAP applied on a consistent basis. The term "<u>person</u>" shall mean any individual partnership, corporation, trust, joint venture, unincorporated association, governmental subdivision or agency or any other entity of any nature. The term "<u>subsidiary</u>" means, with respect to any person, a corporation or other person of which shares of stock or other ownership interest having ordinary voting power to elect a majority of the board of directors or other managers of such corporation or person are at the time owned, or the management of which it otherwise controlled, directly or indirectly, through one or more intermediaries, by such person. The term "<u>affiliate</u>" means, with respect to any specified person, any other person that, directly or indirectly, controls or is controlled by, or is under common control with, such specified person. All meanings assigned to defined terms in this Agreement shall be applicable to the singular and plural forms of the terms defined.

8.2    <u>Notices</u>. All notices, requests, demands and other communications with respect hereto shall be in writing and shall be delivered by hand, sent via telecopier, sent prepaid by Federal

17

Express (or a comparable overnight delivery service) or sent by the United States first-class mail, certified, postage prepaid, return receipt requested, to the following addresses:

If to the Lender, to:

> The Adams National Bank
> 1130 Connecticut Ave., N.W., Suite 200
> Washington, D.C. 20036
> Attn:   Lawrence R. Johnson, Vice President
> Telecopier No. (202) 835-3871

with a copy to:

> Leonard A. Sloan, Esq.
> Friedlander, Misler, Sloan, Kletzkin & Ochsman, PLLC
> 1101 - 17th Street, N.W., Suite 700
> Washington, D.C. 20036-4704
> Telecopier No. (202) 857-8343

If to the Borrower, to:

> 2142 O Street, L.L.C.
> 1700 Q Street, N.W.
> Washington, D.C. 20009
> Attn:  Sean Shaparast, Managing Member
> Telecopier No. (202) 234-5582

with a copy to:

> Babak Movahedi, Esq.
> 1700 Q Street, N.W.
> Washington, D.C. 20009
> Telecopier No.  (202) 234-5582

Any notice, request, demand or other communication delivered or sent in the manner aforesaid shall be deemed given or made (as the case may be) upon the earliest of (a) the date it is actually received, (b) on the business day after the day on which it is delivered by hand, (c) on the business day after the day on which it is properly delivered by Federal Express (or a comparable overnight delivery service), or (d) on the third (3rd) business day after the day on which it is deposited in the United States mail, certified mail, return receipt requested. Any party may change such party's address by notifying the other parties of the new address in any manner permitted by this Section 8.2.

8.3    <u>Successors and Assigns</u>.  This Agreement will be binding upon and inure to the benefit of Lender, Borrower and their respective successors, assigns, personal representatives, executors and administrators, provided that Borrower may not assign or transfer its rights under this Agreement.

8.4    <u>Entire Agreement</u>.  Except for the other Loan Documents expressly referred to in this Agreement, this Agreement represents the entire agreement between Lender and Borrower, supersedes all prior commitments and may be modified only by an agreement in writing.

18

8.5    <u>Survival</u>. All agreements, covenants, representations and warranties made in this Agreement and all other provisions of this Agreement will survive the delivery of this Agreement and the other Loan Documents and the making of the advances under this Agreement and will remain in full force and effect until the obligations of Borrower under this Agreement and the other Loan Documents are fully discharged.

8.6    <u>Governing Law</u>. This Agreement will be governed by and construed in accordance with the laws of the District of Columbia, without reference to conflict of laws principles.

8.7    <u>Expenses</u>. Whether or not any advances are made under this Agreement, Borrower shall pay all out-of-pocket expenses incurred by Lender in connection with the transactions contemplated by this Agreement, including, but not limited to, the reasonable fees and expenses of its counsel.

8.8    <u>Headings</u>. Section headings are for convenience of reference only and shall not affect the interpretation of this Agreement.

8.9    <u>Participations</u>. Lender shall have the right to sell all or any part of its rights under the Loan Documents, and Borrower authorizes Lender to disclose to any prospective participant in the Loan any and all financial and other information in Lender's possession concerning Borrower or the Collateral.

8.10   <u>Third Party Beneficiary</u>. The parties do not intend the benefits of this Agreement or any other Loan Document to inure to any third party.

8.11   <u>Waiver of Jury Trial</u>. TO THE FULLEST EXTENT PERMITTED BY LAW, LENDER AND BORROWER KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHTS THEY MAY HAVE TO A TRIAL BY JURY BASED ON, ARISING OUT OF OR UNDER, OR IN CONNECTION WITH THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT.

8.12   <u>Waiver</u>. The rights of Lender under this Agreement and the other Loan Documents shall be in addition to all other rights provided by law. No waiver of any provision of this Agreement, or any other Loan Document, shall be effective unless in writing, and no waiver shall extend beyond the particular purpose involved. No waiver in any one case shall require Lender to give any subsequent waivers.

8.13   <u>Severability</u>. If any provision of this Agreement or any other Loan Document is held to be void, invalid, illegal or unenforceable in any respect, such provision shall be fully severable and this Agreement or the applicable Loan Document shall be construed as if the void, invalid, illegal or unenforceable provision were not included in this Agreement or in such Loan Document.

8.14   <u>No Setoffs</u>. With respect to a monetary default claimed by Lender under the Loan Documents, no setoff, claim, counterclaim, reduction or diminution of any obligation or defense of any kind or nature that Borrower has or may have against Lender (other than the defenses of payment, Lender's gross negligence or willful misconduct) shall be available against Lender in any action, suit or proceeding brought by Lender to enforce this Agreement or any other Loan Document. The foregoing shall not be construed as a waiver by Borrower of any such rights or claims against Lender, but any recovery upon any such rights or claims shall be had from Lender separately, it being the intent of this Agreement and the other Loan Documents that Borrower shall

19

be obligated to pay, absolutely and unconditionally, all amounts due under this Agreement and the other Loan Documents.

8.15    Publicity.  At its option, Lender may announce and publicize the source of the financing for the Construction in such a manner as Lender may elect, including, without limitation, the placement of a sign for display upon the Real Estate.  If Lender provides a sign to Borrower, then Borrower agrees to provide a prominent and suitable location for the display of the sign on the Real Estate and to maintain the display of such sign for the duration of the Construction or until the Loan have been repaid in full, whichever shall first occur.

8.16    Counterparts.  This Agreement may be executed for the convenience of the parties in several counterparts, which are in all respects similar and each of which is to be deemed to complete in and of itself, and any one of which may be introduced in evidence or used for any other purpose without the production of the other counterparts thereof.

8.17    Liability of Lender.  The Lender shall not be liable to the Borrower or any Guarantor or any other party for any act or omission by it pursuant to the provisions of this Agreement, or in reliance on any certificate or other paper believed by the Lender to be genuine, or in reliance on an opinion of counsel of Lender's selection, in the absence of fraud or gross negligence.  By accepting or approving anything required to be observed, performed or fulfilled by the Borrower or any Guarantor or to be given to the Lender pursuant to the terms of this Agreement, including without limitation, any certificate, balance sheet, statement of profit and loss or other financial statement, survey, receipt, appraisal or insurance policy, the Lender shall not be deemed to have warranted or represented the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision or condition thereof, and such acceptance or approval thereof shall not be or constitute any warranty or representation to any party with respect thereto by the Lender.

8.18    Relationship of Parties.  Nothing contained in this Agreement shall be construed in a manner so as to create any relationship between the Borrower and the Lender other than the relationship of borrower and lender, and the Borrower and the Lender shall not be considered partners or co-venturers for any purpose.

[Signatures to Follow]

20

IN WITNESS WHEREOF, Borrower and Lender have caused this Agreement to be executed in their respective names by duly authorized representatives as of the day and year first above written.

WITNESS:

BORROWER

2142 O Street, L.L.C.
A District of Columbia liability company

By: _____

_____          Sean Shahparast, Managing Member
Print Name:
[Seal]


ATTEST/WITNESS:

LENDER

THE ADAMS NATIONAL BANK

By: _____

Monica Holliday          Lawrence R. Johnson,
Print Name:              Vice President
Print Title:

[Corporate Seal]

21

DISTRICT OF COLUMBIA                    ) ss:

I, _Babak Movahed_ , a Notary Public in and for the aforesaid said jurisdiction, do hereby certify that SEAN SHAHPARAST personally appeared before me in said jurisdiction and acknowledged that he is the Managing Member of 2142 O Street, L.L.C., a party to the foregoing instrument and that the same is his act and deed and the act and deed of 2142 O Street, L.L.C.

IN WITNESS WHEREOF, I have set my hand and Notarial Seal, this 30th day of September, 2004.

[SEAL]                                    _____
                                          Notary Public

My Commission Expires:    _____
                                          Babak Movahed
                                          Notary Public, District of Columbia
                                          My Commission Expires 07-31-2007

DISTRICT OF COLUMBIA                    ) ss:

I, _Marilyn Newman_ , a Notary Public in and for the aforesaid said jurisdiction, do hereby certify that LAWRENCE R. JOHNSON, who is personally well known to me as (or satisfactorily proven to me to be) the person named and who signed the foregoing instrument bearing the date of _OCTOBER 8_, 2004, personally appeared before me in said jurisdiction and acknowledged that he is a Vice President of THE ADAMS NATIONAL BANK; that she has been duly authorized to execute and deliver the foregoing instrument for the purposes therein contained and that the same is her act and deed; that the seal affixed to said instrument is such corporate seal and that it was so affixed by order of the Board of Directors of said corporation; and that she signed her name thereon by like order.

IN WITNESS WHEREOF, I have set my hand and Notarial Seal, this 30th day of September, 2004.

[SEAL]                                    _Marilyn Newman_____
                                          Notary Public

My Commission Expires:    _9/30/08_____

22

## EXHIBIT A

## LEGAL DESCRIPTION OF PROPERTY

All that Land situate in the District of Columbia, more particularly described as follows:

BEING KNOWN AND DESIGNATED as

218 IN ISAAC KIRKSTEINE AND OTHERS SUBDIVISION OF SQUARE 69, AS PER PLAT RECORDED IN THE OFFICE OF THE SURVEYOR FOR THE DISTRICT OF COLUMBIA IN LIBER 48 AT FOLIO 120.

SAID PROPERTY BEING NOW KNOWN FOR ASSESSMENT AND TAXATION PURPOSES AS LOT 218 IN SQUARE 69.

And commonly known as 2142 O Street, N.W., Washington, D.C.

## EXHIBIT B

### COLLATERAL ASSIGNMENT OF PLANS, SPECIFICATIONS & PERMITS

FOR VALUE RECEIVED, 2142 O STREET, L.L.C., a District of Columbia limited liability company (the "Borrower") does hereby sell, assign, pledge, transfer, and set over to THE ADAMS NATIONAL BANK ("Lender"), all of its rights, title and interests in, to and under all of the following: (i) those certain Plans and Specifications, as defined in the Loan Agreement of even date herewith by and between Borrower and Lender (the "Loan Agreement"), and prepared by _____ ("Project Architect") and all amendments, modifications, supplements, general and/or special conditions, addenda, and change orders now and hereafter made thereto (the "Plans and Specifications"), which were prepared for the account of Borrower in connection with renovation and conversion to ten unit residential condominiums on the Property; (ii) all of their rights, title and interests in and to all existing contracts between Borrower and Project Architect concerning the Construction (as defined in the Loan Agreement) on the Property, and all amendments, modifications, supplements, general conditions, addenda and change orders now and hereafter executed relating thereto (collectively, the "Contracts"), which Contracts provide for the preparation of the Plans and Specifications and for administration of the Construction on the Property; and (iii) any and all governmental permits, approvals, inspections, orders, certificates and the like issued to or for the benefit of Borrower in connection with the Construction, to the extent assignable, specifically including, but not limited to, all building, excavation, sheeting, shoring, foundation, grading, and occupancy permits (collectively, the "Permits"). This Assignment shall be operative only upon a default not cured within any applicable grace period made by the Borrower or under the terms of the Loan Agreement, or the terms of any of the "Loan Documents" (as that term is defined in the Loan Agreement), and shall remain in full force and effect so long as any such default not cured within any applicable grace period continues to exist.

The Plans and Specifications are hereby assigned as collateral security for certain indebtedness of Borrower to Lender evidenced by certain Deed of Trust Note dated of even date herewith in the principal amount of Two Million Five Hundred Eighteen Thousand Two Hundred Dollars and No Cents ($2,518,200.00) or so much as may be advanced or readvanced by Lender to Borrower thereunder pursuant to the terms of the Loan Agreement.

Borrower agrees (i) that Lender or its designee may use the Plans and Specifications if Lender enforces any of its rights under the Loan Agreement, and (ii) that Lender does not assume any of Borrower's obligations or duties concerning the Contracts, including but not limited to the obligation to pay Project Architect, until and unless Lender shall exercise its rights hereunder with respect to the Contracts; provided, however, that when and if the Lender exercises its rights hereunder with respect to the Contracts, the Lender shall pay Project Architect any sums due to Project Architect under the Contracts in accordance with the terms thereof, from the date the Lender exercises its rights with respect to the Contracts.

Borrower hereby irrevocably constitutes and appoints Lender or any of its duly authorized and empowered officers or agents as its attorney-in-fact, at Lender's option, after the occurrence of a default not cured within any applicable grace period as aforesaid, to demand, receive, and enforce the Borrower's rights with respect to the Plans and Specifications and/or to the extent permitted by the issuing body the Permits; to give appropriate receipts, releases and satisfactions for and on behalf of Borrower ; and to do any and all acts in the name of Borrower or in the name of Lender with the same force and effect as Borrower could do if this Assignment had not been made. Should Borrower fail to perform any of its obligations to Lender, to Project Architect or to any governmental

24

authority issuing any of the Permits, Lender or its officers or agents shall have the option, as attorney-in-fact, to enforce all rights and obligations of the Borrower with respect to the Plans and Specifications, the Contracts and/or to the extent permitted by the issuing body the Permits and/or to act in Lender's own right. The powers contained in this paragraph shall be deemed coupled with an interest and irrevocable.

Borrower hereby represents and warrants to Lender that no previous assignment of its interest in the Plans and Specifications, Contracts, and/or the Permits has been made; and Borrower agrees not to assign, sell, pledge, transfer, mortgage, or otherwise encumber its interests in the Plans and Specifications, the Contracts and/or the Permits so long as this Assignment is in effect, or further to amend the Contracts without Lender's prior written consent. This Assignment shall be binding upon and inure to the benefit of Borrower and Lender and their respective successors and assigns.

This assignment shall automatically terminate upon payment in full of the Note (as defined in the Loan Agreement).

[SEAL]

**WITNESS:**                                    **BORROWER**

2142 O Street, L.L.C.,
A District of Columbia limited liability company

By: _____

_____
Print Name:                                     Sean Shahparast, Managing Member
[Seal]

25

<u>EXHIBIT C</u>

BUDGET

26

## EXHIBIT D

## ASSIGNMENT OF CONSTRUCTION CONTRACT

FOR VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, 2142 O STREET, L.L.C., a District of Columbia limited liability company (the "Borrower"), hereby assigns to THE ADAMS NATIONAL BANK (the "Lender") all of its right, title and interest in and to the Construction Contract between Borrower and _____ dated _____ _____, _____, with respect to the Construction on real property known as 2142 O Street, N.W., Washington, D.C. (the "Property").

Borrower warrants that there have been no prior assignments of the contract, and that the contract is a valid, enforceable agreement, that neither party is in default to the other thereunder and that all covenants, conditions and agreements have been performed as required therein, except those not due to be performed until after the date hereof. No change in the terms thereof or any change in the Work (as such term is defined therein) to be performed thereunder shall be permitted without the approval of the Lender.

The Construction Contract is hereby assigned as collateral security for certain indebtedness of Borrower to Lender evidenced by a certain Deed of Trust Note (collectively, the "Note") dated _____ _____, 2004, in the principal amount of Two Million Five Hundred Eighteen Thousand Two Hundred Dollars and No Cents ($2,518,200.00) or so much as may be advanced or readvanced by Lender to Borrower thereunder.

This Assignment is for security purposes only. Accordingly, the Lender shall have no right to enforce the provisions of said contract until Borrower shall be in default, which default has not been cured within any applicable grace period under its obligations to the Lender.

Borrower also covenants that it will not exercise any right to select any subcontractor or material vendor or to purchase any of the materials for the Work whose contract or which purchase would be in excess of $1,000 without the Lender's prior written approval.

**WITNESS:**                                         **BORROWER**

2142 O Street, L.L.C.,
A District of Columbia limited liability company

By: _____

_____          Sean Shahparast, Managing Member
Print Name:
[Seal]

27

<u>EXHIBIT E</u>

<u>ACKNOWLEDGMENT AND AGREEMENT OF GENERAL CONTRACTOR</u>

_____ ("General Contractor") hereby acknowledges the foregoing assignment and warrants that there has been no prior assignment of which it has notice.

General Contractor hereby warrants that the Contract (as defined in the foregoing assignment) is a valid enforceable agreement to build and that Borrower is not in default thereunder.

Upon default not cured within any applicable grace period, General Contractor agrees that Lender may enforce the obligations of the Contract with the same force and effect as if enforced by Borrower and may perform the obligations of Borrower, and General Contractor will accept such performance in lieu of performance by Borrower in satisfaction of Borrower's obligation thereunder.

General Contractor agrees that no changes will be made in the Contract and no changes in the Work will be accepted without the Lender's prior written approval.

The undersigned hereby further agrees that if, at any time, the Lender shall become the owner of said property or otherwise requires the use of the said Contract, the Lender shall have the right to use the same without any cost or expense and without payment of any additional fees or charges to the undersigned, only in so far as the undersigned is acting and performing duties and expending monies within the conditions of his original contract with the Borrower.

General Contractor agrees to notify the Lender of the occurrence of (i) any material defaults by Borrower under the Contract within ten (10) days after General Contractor has knowledge of such defaults, and (ii) any default by Borrower under the Contract based upon which General Contractor intends to send the notice of termination to Borrower, within ten (10) days after General Contractor has knowledge of such default.  General Contractor further agrees to allow the Lender a period of thirty (30) days from the date a written notice of default is received by the Lender, by certified or registered mail, return receipt requested, to cure said default by Borrower.

WITNESS\ATTEST:                    <u>GENERAL CONTRACTOR</u>

_____

_____          By:     _____
Print Name:                                    Print Name
Print Title:

[Seal]

Dated: _____ __, 200__

28

EXHIBIT F

PROJECT ARCHITECT'S INITIAL CERTIFICATION,
CONSENT AND AGREEMENT

The undersigned, an architect duly licensed and registered in the District of Columbia, has prepared final working plans and detailed specifications (the "Plans and Specifications") for 2142 O Street, L.L.C., a District of Columbia limited liability company ("Borrower") in connection with the proposed renovation and conversion to ten unit residential condominiums (the "Construction") on the property located at 2142 O Street, N.W., Washington, D.C. (the "Property"). The undersigned understands that The Adams National Bank (the "Lender"), is about to make a loan (the "Loan") to the Borrower to finance the Construction. Accordingly, and in order to induce the Lender to make the Loan, the undersigned hereby certifies that the said Plans and Specifications are in compliance with all requirements and restrictions of all governmental authorities having jurisdiction, including, without limitation, all applicable zoning, building, fire and health ordinances, rules and regulations, and the requirements of the appropriate Board of Fire Underwriters or other similar body acting in and for the locality in which the property is located.

The undersigned hereby further agrees that if, at any time, the Lender shall become the owner of said property or otherwise requires the use of the said Plans and Specifications, the Lender shall have the right to use the same without any cost or expense and without payment of any additional fees or charges to the undersigned, only in so far as the undersigned is acting and performing duties and expending monies within the conditions of his original contract with the Borrower.

The undersigned further acknowledges receipt of a copy of the Collateral Assignment of Plans, Specifications and Permits between the Borrower and Lender and agrees that by executing this Consent he shall be bound by said Agreement.

Nothing herein contained shall be deemed to constitute the undersigned the agent of the Lender and no relationship of principal and agent or the employment between the undersigned and the Lender is intended.

ARCHITECT

_____

By: _____
Print Name:
Print Title:

Dated: _____ __, 200__

29

# EXHIBIT 3

Return recorded original to:

Friedlander, Misler, Sloan,
Kletzkin & Ochsman, PLLC
1101 17th Street, N.W., Suite 700
Washington, D.C. 20036
Attn: Brian J. Fender, Esq.

## THIS IS A CREDIT LINE DEED OF TRUST

## DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FILING

THIS DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FILING (as amended, modified or supplemented from time to time, the "Deed of Trust"), dated as of the 30th day of September, 2004 from **2142 O STREET, L.L.C.**, a District of Columbia limited liability company (the "Grantor"), having an address of 1700 Q Street, NW, Washington, D.C. 20009, Attn: Sean Shaparast, to **LAWRENCE R. JOHNSON**, as trustee (the "Trustees" or "Trustee"), having a principal place of business in the District of Columbia and having an address for notice purposes in care of The Adams National Bank, 1130 Connecticut Avenue, N.W., #200, Washington, D.C. 20036, for the benefit of **THE ADAMS NATIONAL BANK** (the "Beneficiary"), having an address of 1130 Connecticut Avenue, N.W., #200, Washington, D.C. 20036, recites and provides:

THE FOLLOWING INFORMATION IS FOR PURPOSES OF THE FIXTURE FILING:

SECURED PARTY:

**THE ADAMS NATIONAL BANK**
1130 Connecticut Avenue, N.W., #200,
Washington, D.C. 20036

DEBTOR:

**2142 O STREET, L.L.C.**
1700 Q Street, N.W.
Washington, D.C. 20009
Attn: Sean Shaparast, Managing Member
Telecopier No. (202) 234-5582

ORGANIZATIONAL
INFO:

Debtor is a District of Columbia limited liability company

DEBTOR'S
TAX IDENTIFICATION NO.: _____

DEBTOR'S
ORGANIZATIONAL NO.: _____

## RECITALS:

The Beneficiary is the holder of a certain Deed of Trust Note dated of even date herewith payable by Grantor to the order of the Beneficiary in the original principal amount of Two Million Five Hundred Eighteen Thousand Two Hundred Dollars and No Cents ($2,518,200.00)(as amended, modified, supplemented, renewed or replaced from time to time, the "Note"); and

The Grantor desires to secure the payment of the Note, the loan evidenced by the Note (the "Loan"), the other Secured Indebtedness described herein and the performance

of the obligations of the Grantor hereunder, all in accordance with the terms and conditions set forth below.

Accordingly, to induce the Beneficiary to make the Loan, for and in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Grantor hereby agrees as follows:

SECTION 1.  **GRANTING CLAUSE.**

1.1    <u>Security Property</u>.  The Grantor hereby grants, mortgages, conveys, assigns, pledges, transfers and sets over to the Trustees, with special warranty of title, and grants to the Trustees and the Beneficiary a security interest in all of Grantor's right, title and interest in and to the following property (collectively, the "Security Property"), in trust, to secure the Secured Indebtedness (as defined below).

(a)    The land located in the District of Columbia, commonly known as 2142 O Street, N.W., Washington, D.C., and more particularly described in <u>Exhibit A</u> attached hereto and incorporated herein by reference, and all rights, appurtenances, easements, privileges, remainders and reversions now or hereafter appertaining thereto (the "Land");

(b)    All buildings, structures and other improvements now or hereafter erected on the Land (the "Improvements");

(c)    All fixtures, equipment, machinery and articles of personal property now or hereafter owned by the Grantor and at any time affixed to, attached to, placed upon, or used in any way in connection with the use, enjoyment, occupancy or operation of the Improvements or the Land, including, but not limited to, all plumbing and electric apparatus and equipment, cleaning and maintenance equipment, all boilers, tanks, engines, motors, power equipment, piping and plumbing fixtures, pumps, heating and air conditioning equipment and systems and lighting equipment and systems and replacements of all the foregoing (excluding, however, any of the foregoing items owned by lessees, except to the extent of the Grantor's interest therein), all building materials and equipment now or hereafter delivered to the Land and stored thereon, and all interests of the Grantor in any of the foregoing items at any time acquired under conditional sales contracts or installment sales contracts (all of the foregoing property described in this clause being hereinafter referred to as the "Equipment");

(d)    All leases or sales contracts, written or oral, whether now existing or hereafter arising, of or relating to the Land, the Improvements or the Equipment (together, the "Premises"), including, without limitation, all leases, contracts and agreements for the use and occupancy of all or any part of the Premises (together, the "Leases") and all rents, income, receipts, royalties, room sales, benefits, revenue, issues and profits (the "Rents and Profits") now or hereafter due or to which the Grantor may now or hereafter become entitled or may claim or demand, arising from or issuing out of the Leases or from or out of the Premises; provided, however, that until the occurrence of an Event of Default (as defined herein) and the election of the Beneficiary to collect the Rents and Profits after such Event of Default, the Grantor shall have the right to collect and dispose of the Rents and Profits without restriction, and provided further that this assignment shall not impose on the Trustees or the Beneficiary any of the Grantor's obligations under such leases and contracts;

(e)    All tangible or intangible property of the Grantor now or hereafter used in, arising out of or relating to the construction, ownership, use, sale or operation of the Premises,

including, without limitation, documents, instruments, chattel paper, accounts and general intangibles and all proceeds of the foregoing (as each of the foregoing terms is defined in the Uniform Commercial Code as adopted by the District of Columbia (the "UCC")); architectural and engineering plans and specifications for the Premises or any portion thereof; contract rights; and any funds, letters of credit or other property that is now or hereafter provided by the Grantor to secure the payment of the indebtedness secured hereby; and

(f)    All proceeds of the conversion, voluntary or involuntary, of any of the foregoing into cash or liquidated claims, including, without limitation, proceeds of insurance and condemnation awards (the "Proceeds"), subject to the provisions of Section 3 hereof.

1.2    Security Agreement. It is the intent of the parties hereto that this Deed of Trust shall serve as a security agreement granting to the Beneficiary a security interest, in accordance with the terms of the UCC, in all Security Property subject to the UCC. As to all such Security Property, the Beneficiary shall have, without limitation, all of the rights and remedies of a secured party under the UCC. The recordation of this Deed of Trust shall also constitute a fixture filing in accordance with the provisions of the UCC.

1.3    Secured Indebtedness. This Deed of Trust is given to secure the performance of the covenants contained in this Deed of Trust, and to secure the payment of the following (the "Secured Indebtedness"):

(a)    The principal of, interest on and all other amounts due under or in connection with the Note and the Loan, and any modifications, extensions or renewals of the Note or the Loan; provided, however, that the principal amount of the Secured Indebtedness secured by this Deed of Trust and described in this clause (a) shall not exceed in the aggregate at any one time outstanding Two Million Five Hundred Eighteen Thousand Two Hundred Dollars and No Cents ($2,518,200.00), plus interest thereon, fees due with respect to any such indebtedness, and all costs of collection with respect thereto, including, without limitation, any costs and expenses incurred by the Trustees or the Beneficiary in connection with the enforcement of this Deed of Trust; and

(b)    All amounts now or hereafter owing to the Beneficiary or the Trustees under or in connection with the provisions of the various documents and instruments executed by the Grantor or a guarantor in connection with the Loan, including, but not limited to, the Note, this Deed of Trust, the Assignment of Leases and Rents dated of even date herewith made by the Grantor to the benefit of the Beneficiary, the Guaranty of Payment, Performance and Completion of even date herewith made by Dr. Hamid Kazemi (jointly and severally, the "Guarantor") and the Environmental Indemnity Agreement of even date herewith made by the Grantor and Guarantor to the benefit of the Beneficiary (collectively, as amended, modified or supplemented from time to time, the "Loan Documents").

1.4    Condition of Grant. If the Grantor shall pay or cause to be paid to the Beneficiary the Secured Indebtedness in full as provided in the Loan Documents at any time before the sale provided for herein, and shall well and truly perform the obligations of the Grantor hereunder, then these presents and the estate granted hereby shall cease, determine and become void, and upon proof of the foregoing given to the Trustees to their satisfaction, the Trustees shall (at the expense of the Grantor) release and discharge this Deed of Trust and the liens, security interests and assignments created hereby.

SECTION 2.  **REPRESENTATIONS, WARRANTIES AND COVENANTS**.

The Grantor represents, warrants, covenants and agrees as follows:

2.1  Payment and Performance.  The Grantor shall pay the Secured I ndebtedness when and as the same shall become due and shall perform its obligations under and comply with, the provisions of the Loan Documents.

2.2  Maintenance of Premises.  The Grantor shall maintain the Premises and all other property subject to this Deed of Trust in good condition and repair, reasonable wear and tear, fire or other casualty excepted.  The Grantor shall not commit or suffer any waste to the Premises.  The Grantor shall complete in a good and workmanlike manner any Improvement which is now located or may be constructed on the Land, and shall promptly restore in like manner any Improvements which may be damaged or destroyed, provided insurance proceeds covering the same are released to Grantor for such purpose, all in accordance with applicable laws and regulations and plans and specifications approved by the Beneficiary, which approval shall not be unreasonably withheld.  The Beneficiary may, upon notice, at any reasonable time and from time to time, cause an inspection to be made of the Premises by its representatives, and such representatives shall be permitted reasonable access to the Premises and every part thereof.  Beneficiary will not interrupt conduct of business during inspections.  The Grantor shall not remove any Equipment from the Premises without the prior written consent of the Beneficiary unless (a) the Grantor replaces such Equipment before or promptly after each such removal with Equipment of a like kind and of a value at least equal to the value of the Equipment so removed, provided such item of equipment is necessary to the operation, use, enjoyment or occupancy of the Improvements, and (b) the Beneficiary is granted a perfected first security interest in such replacement Equipment.

2.3  Required Insurance.  The Grantor shall keep all Improvements and Equipment insured against loss and damage by fire with standard extended coverage in an amount not less than the replacement cost of the Improvements and Equipment, and Grantor shall maintain public liability insurance in an amount not less than Two Million Dollars and No Cents ($2,000,000.00) in the aggregate, with not less than One Million Dollars and No Cents ($1,000,000.00) per occurrence, builder's risk insurance during any construction, malicious mischief insurance, and insurance against such other hazards as the Beneficiary reasonably may require, in amounts, with insurers and under forms of policies containing such provisions and endorsements (including the standard mortgagee endorsement) as may be reasonably required by the Beneficiary.

2.4  Terms of Insurance.  All policies of insurance required by the terms of this Deed of Trust (except the employee benefit and public liability insurance) shall contain a lender's loss payable endorsement and standard mortgagee clause for the benefit of the Beneficiary, which shall provide, in part, that (a) in the event of loss, all insurance proceeds shall be paid to the Beneficiary, and the Beneficiary shall be authorized and empowered by and with the concurrence of the Grantor to settle, adjust or compromise any claims for loss, damage or destruction under such policies of insurance, (b) any loss covered by such insurance shall be payable to the insurer in accordance with the terms of such policy notwithstanding any act or negligence of the Grantor, its agents or employees, the named insured, or any owner, tenant or occupant of the Premises which might otherwise result in forfeiture of said insurance, (c) the insurer waives all rights of setoff, counterclaim or deduction against the Grantor, and (d) should leasehold title to and beneficial ownership of the Premises become vested in the Beneficiary, the insurance provided by such policies shall continue for the term thereof for the benefit of the

Beneficiary. All required insurance shall provide that (1) the insurance afforded all parties named as insured shall be primary insurance and shall not participate with, nor be in excess over, any other valid and collectible insurance available to the Beneficiary, (2) any other insurance obtained by any named insured shall not be called upon to contribute until the limits of the policies required hereunder are exhausted, and (3) the insurance required hereunder cannot be canceled without at least thirty (30) days' prior written notice to the Beneficiary. All insurance required hereunder shall be issued by companies and in amounts in each company approved in advance by the Beneficiary, in its reasonable discretion, and such insurance shall be in the form and on terms (including, but not limited to, deductibles, self-insured retentions or similar provisions) approved in advance by the Beneficiary, in its reasonable discretion.

2.5    <u>Other Provisions Regarding Insurance</u>. The Grantor shall deliver all such policies (or certified copies thereof) and, prior to their expiration dates, all renewals thereof, to the Beneficiary, and shall pay all premiums thereon. If required by the Beneficiary, the Grantor shall pay to the Beneficiary, in addition to all other amounts payable hereunder and under the Secured Indebtedness, on the same day payments are due under the Note of each month, an amount equal to one-twelfth (1/12th) of the annual premiums for such insurance, to be held by the Beneficiary in a segregated account for the payment of such premiums. The Beneficiary shall not be required to pay interest on any amounts held in such account. The Grantor shall not permit any condition to exist on the Premises which would wholly or partially invalidate the insurance thereon. In the event of a loss, the Grantor shall immediately notify the Beneficiary, and, if the Grantor does not promptly file proof of such loss with the insurer, the Beneficiary may do so and may, on behalf of the Grantor, adjust and compromise any claims under such insurance and collect and receive the Proceeds thereof and is hereby irrevocably appointed attorney-in-fact for the Grantor for such purposes, and may deduct from such Proceeds any expenses reasonably incurred by it. The Proceeds of any such insurance shall be applied as provided in Section 3 below. The Grantor shall not take out separate insurance concurrent in form or contributing in the event of loss with that required to be maintained hereby without the prior written consent of the Beneficiary. The Grantor hereby assigns all of its rights, title and interest in and to all such policies to the Beneficiary, including unearned premiums on and Proceeds payable under such policies as additional security for the Secured Indebtedness.

2.6    <u>Taxes, Liens and Assessments</u>. The Grantor shall keep the Security Property free from liens which may have priority over the lien of this Deed of Trust, except liens for taxes not yet due and payable. The Grantor shall pay all taxes and assessments levied against or which constitute liens on the Security Property when they are due, but the Grantor may appropriately and in good faith contest the levy of any such tax or assessment provided that it makes whatever provision for the protection of the Security Property, including the payment of such tax or assessment (or adequate bond therefor), that the Beneficiary may reasonably require. **Until such time as the Loan is fully repaid, receipts evidencing payment of all taxes and assessments, including water rents or liens levied against or which constitute liens on the Security Property shall be delivered to the Beneficiary not later than thirty (30) days after the due date thereof.** Notwithstanding the foregoing, if required by the Beneficiary, the Grantor shall pay to the Beneficiary, in addition to all other amounts payable hereunder and under the Secured Indebtedness, on the same day of each month as payments are due under the Note, an amount equal to one-twelfth (1/12th) of the annual real estate taxes on the Premises to be held by the Beneficiary in a segregated account for the payment of such taxes. The Beneficiary shall not be required to pay interest on any amounts held in such account.

2.7    Subordinate Liens. The Grantor shall not allow any inferior lien to encumber any of the Security Property and shall make no subsequent assignment of nor grant any subsequent security interest in any of the Security Property without the prior written consent of the Beneficiary.

2.8    Financial Information. The Grantor shall maintain full and correct books and records in accordance with federal income tax principles showing in detail the earnings and expenses relating to the Premises and shall permit representatives of the Beneficiary to examine such books and records and all supporting vouchers and data at any time and from time to time as the Beneficiary reasonably may request at the Grantor's principal place of business. Grantor shall deliver to the Beneficiary annually: (i) no later than ninety (90) days after the end of the Grantor's fiscal year, current financial statements, including cash-flow statements, compiled by an independent Certified Public Accountant and certified by the Managing Member of the Grantor, in form and content satisfactory to the Beneficiary, (ii) no later than fifteen (15) days after filing with the Internal Revenue Service, a copy of its federal income tax return and all schedules and exhibits thereto or a copy of its notification to extend the time within which to file its federal income tax return, (iii) annually, by February 1 of each year, a certified rent roll for the Premises and (iv) within ten (10) business days after Beneficiary's request therefor, such financial information with respect to Grantor and/or the Premises as the Beneficiary reasonably may require from time to time. Guarantor shall deliver to the Beneficiary annually: (i) no later than ninety (90) days after the end of Guarantor's fiscal year, current financial statements, including cash-flow statements, compiled by an independent Certified Public Accountant, in form and content satisfactory to the Beneficiary, (ii) no later than fifteen (15) days after filing with the Internal Revenue Service, a copy of its federal income tax return and all schedules and exhibits thereto or a copy of its notification to extend the time within which to file its federal income tax return, (iii) within ten (10) business days after Beneficiary's request therefor, such financial information with respect to Guarantor as the Beneficiary reasonably may require from time to time. In the event that the Grantor or any Guarantor fails to provide Beneficiary with any of the foregoing information as and when due, the Loan shall thereafter bear interest at the three percent (3%) above the interest rate then in effect under the Loan until such time as said information is provided. The foregoing right to increase the interest rate payable under the Loan Documents is and shall be in addition to any other rights and/or remedies of the Beneficiary under the Loan Documents. All financial statements shall be in such reasonable detail and shall be accompanied by such certificates of the Grantor or Guarantor as applicable; provided, however, Beneficiary's use of such financial information shall be for its own internal use and Beneficiary shall not transmit, divulge or otherwise disclose such information to third parties (other than as required by state and federal rules and regulations governing Beneficiary or potential purchasers, assignees and/or participants of or to the Loan) without Grantor's consent.

2.9    Condemnation. In the event that any proceedings to take the Premises or any part thereof by exercise of the power of eminent domain are undertaken or threatened, the Grantor shall give the Beneficiary prompt notice thereof. Any award made to the Grantor shall be paid to the Beneficiary, and the Grantor hereby appoints the Beneficiary its attorney-in-fact to receive and give all appropriate discharges for any such award made to the Grantor, and the Beneficiary may deduct from any such award any expenses reasonably incurred by it. The Proceeds of any such award shall be applied in accordance with the provisions of Section 3 of this Deed of Trust. The Grantor hereby assigns all its rights, title and interest in and to all such awards to the Beneficiary as additional security for the Secured Indebtedness, subject to Section 3 hereof.

2.10    Indemnification. The Grantor shall protect, indemnify and save harmless the Trustees and the Beneficiary and their respective directors, officers, agents and employees (the "Indemnified Parties") from and against all losses, liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses (including, without limitation , reasonable attorneys' fees and expenses) imposed upon or incurred by or asserted against an Indemnified Party (collectively, the "Losses") by reason of (a) any failure on the part of the Grantor to perform or comply with any of the covenants or conditions of this Deed of Trust  or any other Loan Document, (b) the performance of any labor or services and furnishing of any materials or other property with respect to the Premises or any part thereof, (c) any representation or warranty contained herein or in any other Loan Document proving to be materially false when made, (d) any accident, injury to or death of persons or loss of or damage to property occurring on or about the Premises or any part thereof, or (e) any claim or proceeding  affecting the Security Property. Any amounts payable to an Indemnified Party under this Section 2.10 which are not paid within ten (10) days after written demand therefor by the Beneficiary shall bear interest at the highest rate of interest being charged with respect to any Secured Indebtedness, plus five percent (5%) per annum from the date of such demand. In the event any action, suit or proceeding is brought against an Indemnified Party by reason of any such occurrence, the Grantor, upon the written request of the Beneficiary, will, at the Grantor's expense, resist and defend such action, suit or proceeding or will cause the same to be resisted and  defended by counsel designated by the Grantor and approved by the Beneficiary, in its reasonable discretion. The obligations of the Grantor under this Section 2.10 shall survive the release and discharge of this Deed of Trust pursuant to Section 1.4 above. The Grantor shall not be required to indemnify an Indemnified Party with respect to any Losses resulting from the gross negligence or willful misconduct of such Indemnified Party or for any Losses arising after the date upon which title to the Security Property shall have passed to Beneficiary through foreclosure or a deed in lieu of foreclosure, or to a third party as a result of a foreclosure or other sale, or Beneficiary shall have taken possession and control of the Premises in accordance herewith.

2.11    Compliance with Laws. The Grantor shall not permit any use or activity of the Premises that would constitute a violation of any applicable law, regulation, use or occupancy permit, restrictive covenant, agreement or other requirement applicable to the Premises. The Grantor shall cause the Premises to be owned, maintained and developed in accordance with all applicable laws, ordinances, rules and regulations, and will comply with and maintain in full force and effect all licenses, permits and approvals required for the ownership, maintenance, operation and development of the Premises. The Grantor shall not initiate, join in or consent to any change in any zoning, land use, environmental or other law or ordinance applicable to the Premises or in any private restrictive covenant, easement or other public or private restriction limiting or defining the uses which may be made of the Premises or any part thereof without the prior written consent of the Beneficiary.

2.12    Payments of Expenses. The Grantor shall pay, upon demand, all reasonable costs, fees and expenses incurred by the Beneficiary in connection with the disbursement and collection of the Secured Indebtedness, the enforcement of its rights under the Loan Documents and in connection with the Beneficiary's seeking legal advice, whether with respect to such disbursement or with respect to collection of the Secured Indebtedness or enforcement of the Beneficiary's rights under the Loan Documents. In addition, Grantor shall pay, upon demand, all reasonable costs, fees and expenses incurred by the Beneficiary and/or the Trustees: (i) upon the occurrence of an Event of Default under any of the Loan Documents, or (ii) upon the occurrence of a casualty loss or the condemnation of all or any part of the Security Property, or (iii) if any Hazardous or Toxic Substance is detected and such Hazardous or Toxic Substance

was not stored and/or applied in accordance with all applicable federal, state and local laws and regulations; or (iv) if a material violation in any of the environmental representations, warranties and covenants contained in Section 2.22 hereof is discovered. Such costs, fees and expenses shall include, without limitation, appraisal fees, title, hazard and liability insurance premiums, survey charges, inspection fees, recording costs, court costs and fees, and reasonable charges and expenses of attorneys, engineers and other consultants retained by the Beneficiary in connection with the Secured Indebtedness.

2.13    Zoning Compliance.  To the best of Grantor's knowledge, current use and operation of the Premises is a permitted use under all applicable zoning ordinances and other land use regulations, and the Premises and such use thereof in all other respects now comply with all applicable zoning ordinances, land use regulations, restrictive covenants and all laws, ordinances, orders, rules and regulations of all governmental and quasi-governmental authorities.  The Grantor will comply with all applicable laws, ordinances, orders, requirements, rules, regulations, restrictive covenants and zoning proffers affecting the Premises.

2.14    Subdivision and Separate Tax Lot.  The Land, for all purposes, may be mortgaged, conveyed and otherwise dealt with as a separate legal lot or parcel in accordance with applicable laws, ordinances and regulations.  The Land is taxed separately without regard to any other property.

2.15    Organization. The Grantor is a limited liability company duly organized, validly existing and in good standing under the laws of the District of Columbia with full power and authority to execute, deliver and perform the covenants and obligations set forth in this Deed of Trust and the other Loan Documents; and the Loan Documents have been duly authorized, executed and delivered by the Grantor.

2.16    No Litigation.  There is no action, suit or proceeding pending or, to the knowledge of the Grantor, threatened against or involving the Grantor which may, either in any case or in the aggregate, result in any material adverse change in the business, properties or assets or in the condition, financial or otherwise, of the Grantor or which may result in any material liability on the part of the Grantor or which questions the validity of any of the Loan Documents or any action taken or to be taken in connection with any of them.

2.17    No Conflicting Agreements.  There is no provision of the Articles of Organization or Operating Agreement of the Grantor and there is no provision of any existing mortgage, indenture, contract or agreement binding on the Grantor or affecting any property of the Grantor which would conflict with or in any way prohibit the execution, delivery or performance of the terms of any of the Loan Documents.

2.18    Enforceable Obligations.  This Deed of Trust and the other Loan Documents to which the Grantor is a party are legal and binding obligations of the Grantor enforceable in accordance with their terms; subject, however, to all applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting rights of creditors.

2.19    Flood Insurance. No portion of the Improvements lies or will lie within a 100-year flood plain or in an identifiable "flood plain area" or "special flood hazard area" as such terms are defined by the Department of Housing and Urban Development, under the Flood Disaster Protection Act of 1973, as amended.

2.20    Approval of Leases.  All leases of all or any portion of the Premises shall, at the Beneficiary's sole option, be subordinate to the lien of this Deed of Trust.  Nevertheless, upon request by the Beneficiary or upon the Grantor's request with the Beneficiary's consent (which shall not be unreasonably withheld, conditioned or delayed), each tenant under any such lease shall be required to enter into an attornment agreement with the Beneficiary, in form, content, scope and substance satisfactory to the Beneficiary, providing for the continuation of such lease, at the option of the Beneficiary, notwithstanding default by the Grantor under any of the Loan Documents, a foreclosure of the lien of this Deed of Trust, or a conveyance of the Premises to the Beneficiary or another party in lieu of foreclosure.

2.21    Operating Accounts.    The Grantor shall maintain all operating accounts associated with the Premises with the Beneficiary throughout the term of the Loan.   In the event that the Grantor fails to maintain its operating accounts with the Beneficiary, such failure shall constitute an Event of Default hereunder and the Loan shall thereafter bear interest at three percent (3%) above the interest rate then in effect hereunder until such time as said default is cured. The foregoing right to increase the interest rate payable under the Loan Documents is and shall be in addition to any other rights and/or remedies of the Beneficiary under the Loan Documents.

2.22    Environmental Compliance.

(a)    All future uses of the Premises will be in compliance with all federal, state and local environmental laws and regulations ("Environmental Legal Requirements").  In the event of a future violation of such laws or regulations and Environmental Legal Requirements, or in the event of a release or threatened release of any Hazardous or Toxic Substance as herein defined, in, on, under or in any way affecting the Premises, all clean-up or other corrective measures shall be taken promptly by the Grantor, at the Grantor's sole expense and in full compliance with all applicable laws and regulations and Environmental Legal Requirements.  None of the following materials or substances (collectively, "Hazardous or Toxic Substances"), including, but not limited to, asbestos, PCBs and urea formaldehyde, have been generated, treated, stored, deposited, released or disposed of in violation of law in, on, under or in any way affecting the Premises or in or on any structures located on the Premises, from any source whatsoever, by the Grantor or, to the best of Grantor's knowledge, its predecessors in interest in the Premises or any other person:

(1)    Solid or hazardous waste, as defined in the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. '6901 et seq., or in any applicable state or local law or regulation, except to the extent that the storage and application of such Hazardous Substances was in accordance with all applicable federal, state and local laws and regulations;

(2)    Hazardous Substances, as defined in the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. 9601 et seq., or in any applicable state or local law or regulation, except to the extent that the storage and application of such Hazardous Substances was in accordance with all applicable federal, state and local laws and regulations;

(3)    Toxic Substances, as defined in the Toxic Substances Control Act ("TSCA"), 15 U.S.C. 2601 et seq., or in any applicable state or local law or regulation, except to the extent that the storage and application of such Toxic Substances was in accordance with all applicable federal, state and local laws and regulations;

(4)    Insecticides, fungicides or rodenticides, as defined in the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA"), 7 U.S.C. 136 et seq., or in any applicable state or local law or regulation, except to the extent that the storage and application of such insecticides, fungicides or rodenticides was in accordance with all applicable federal, state and local laws and regulations.

(b)    To the best of the Grantor's knowledge, the Premises are not identified on the current or proposed (i) National Priorities List ("NPL"), (ii) Comprehensive Environmental Response, Compensation and Liability Inventory System ("CERCLIS") list, or (iii) any list arising from a state statute similar to CERCLA.   There are and have been no pending or, to the Grantor's knowledge, any threatened or anticipated:  (1) judicial or administrative  proceedings arising from or in any way associated with Environmental Legal Requirement; (2)  notices from any governmental entity or by any other person or entity, of possible or alleged noncompliance with any Environmental Legal Requirement; (3) judgements, decrees or orders arising from or in any way associated with Environmental Legal Requirements, whether or not entered upon consent; or (4) written agreements with a governmental entity or any other person or entity arising from or in any way associated with Environmental Legal Requirements, whether or not incorporated in a judgment, decree or order.  The Grantor shall not create, destroy, dredge, fill, drain or otherwise alter any wetlands as defined or identified by the U.S. Army Corps of Engineers (or other regulatory agency having jurisdiction over wetlands) or other regulated areas on the Premises, if any, without the proper authorizations and permits from the U.S. Army Corps of Engineers.  To the best of Grantor's knowledge, the Premises are not located in an area governed by the Chesapeake Bay Critical Area Protection Program, (the "Bay Act").  No portion of the Premises shall be developed in violation of the Bay Act.  The Grantor covenants and agrees that it will indemnify, hold harmless, and defend the Beneficiary from and against any and all claims, loss, damage, response costs and expenses arising after the date hereof out of or in any way relating to a breach of these environmental covenants and representations including, but not limited to:  (i) claims of third parties (including governmental agencies), for damages, penalties, response costs, injunctive or other relief; (ii) expenses, including reasonable fees of attorneys and experts, of reporting the existence of Hazardous or Toxic Substance to any governmental agency; and (iii) any and all expenses or obligations, including reasonable attorneys' fees, incurred at, before and after any trial or appeal therefrom or administrative proceeding or appeal therefrom whether or not taxable as costs, including, without limitation, reasonable attorneys' fees, witness fees (expert and otherwise), deposition costs, copying and telephone charges and other expenses, all of which shall be paid by the Grantor when accrued (a list of or invoices showing such expenses shall be given to the Grantor).  The provisions of this Section 2.22 shall be binding on any successor or assign of the Grantor including, without limitation, any entity which acquires an interest in the Grantor, and shall survive the satisfaction of the Secured Indebtedness, but only for events which occurred prior to satisfaction or prior to Beneficiary taking possession and control in accordance herewith, or title to the Premises by foreclosure, a deed in lieu of foreclosure, or a sale to a third party, whichever occurs first.  Neither the inclusion of environmental provisions in this Deed of Trust per se nor the Beneficiary's exercise of its rights pursuant to such environmental provisions shall be construed as participation by the Beneficiary in the management of the Grantor; rather, the environmental provisions and exercise of them are intended exclusively to protect the Beneficiary's security interest from devaluation due to environmental problems.

2.23    Loan to Value Ratio.  Until such time as the Loan is fully repaid, the Premises shall have a required "Loan to Value Ratio" of not greater than the lesser of (i) eighty percent (80%) of the "as is" value and (ii) seventy-five percent (75%) of the discounted "as complete" value of the Project (the "MLTV") based on an appraisal (to be engaged by Lender at the sole

cost of Borrower) (the "Appraisal"), which appraisal shall be satisfactory to Lender in all respects, in Lender's sole absolute and unreviewable discretion. If at any time during the term of the Loan, the loan-to-value ratio is greater than the MLTV, based on appraisals (to be engaged by Lender at the sole cost and expense of Borrower from time to time), which appraisals shall be satisfactory to Lender in all respects, in Lender's sole, absolute and unreviewable discretion, the Borrower, within thirty (30) days after Lender's demand, shall make a principal curtailment under the Loan so as to meet the MLTV ratio.

2.24    Authorization to File Financing Statements. The Grantor hereby irrevocably authorizes the Beneficiary at any time and from time to time to file in any filing office in any Uniform Commercial Code jurisdiction any initial financing statements and amendments thereto that: (a) indicate the Security Property: (i) as all assets of the Grantor used or located on, arising out of or relating to the construction, ownership, use, sale or operation of the Premises or words of similar effect, regardless of whether any particular asset comprised in the Security Property falls within the scope of Article 9 of the Uniform Commercial Code of the State or such jurisdiction, or (ii) as being of an equal or lesser scope or with greater detail, and (b) provide any other information required by Article 9 of the Uniform Commercial Code of the State, or such other jurisdiction, for the sufficiency or filing office acceptance of any financing statement or amendment, including without limitation: (i) whether the Grantor is an organization, the type of organization and any organizational identification number issued to the Grantor and, (ii) in the case of a financing statement filed as a fixture filing or indicating Security Property as extracted collateral or timber to be cut, a sufficient description of real property to which the Security Property relates. The Grantor agrees to furnish any such information to the Beneficiary promptly upon the Beneficiary's request therefor.

SECTION 3.    **DISBURSEMENTS OF INSURANCE AND CONDEMNATION PROCEEDS.**

3.1    Application of Proceeds. The Proceeds arising out of any casualty loss or condemnation award shall, at the Beneficiary's sole option, be released to the Grantor in whole or in part upon conditions satisfactory to the Beneficiary for the restoration or repair of the property damaged or applied to the reduction of the Secured Indebtedness. Notwithstanding the foregoing, provided that no Event of Default and no event which, with the giving of notice or lapse of time, or both, would constitute an Event of Default, shall have occurred and be continuing, the Beneficiary shall pay such Proceeds received by it to the Grantor to reimburse the Grantor's costs of restoring and repairing the Premises in accordance with the provisions of Section 3.2 below. Advances of such Proceeds that are not required for such purposes shall be applied to the reduction of the Secured Indebtedness.

3.2    Procedures for Advances of Proceeds. Advances of such Proceeds to the Grantor shall be made in the same manner and subject to the same conditions as advances of construction loan proceeds are made in accordance with the Beneficiary's standard construction lending practices. In no event shall the Beneficiary be required to advance such Proceeds unless (a) the Beneficiary reasonably determines that restoration is economically feasible and the Premises can be restored and rebuilt to a profitable condition with such Proceeds and other funds available to the Grantor within a reasonable period of time, and (b) the casualty loss or condemnation does not result in the cancellation or termination of any lease of all or any part of the Premises within the period reasonably estimated by the Beneficiary to be required for the completion of restoration. The Premises shall be so restored and rebuilt by the Grantor as to be of at least equal value and of substantially the same character as existed prior to the casualty loss or the exercise of the power of eminent domain, and such restoration and rebuilding shall be promptly commenced after the loss or the exercise of such power. Nothing contained in this

Section 3.2 shall be deemed to excuse the Grantor from repairing or maintaining the Premises as provided in Section 2.2 above, or restoring all damage to the Premises whether or not there are Proceeds available to the Grantor for that purpose or whether or not such Proceeds are sufficient in amount.

SECTION 4. **DEFAULTS AND REMEDIES.**

4.1    Events of Default.    Upon the occurrence of any one or more of the following events, there shall be an event of default hereunder (an "Event of Default"):

(a)    Failure to Pay.    If default shall be made in the due and punctual payment of the Secured Indebtedness or any part thereof;

(b)    Breach of Covenants.    If the Grantor shall fail to perform, observe or comply with any of the covenants, agreements, terms and conditions contained in this Deed of Trust (other than any such failure resulting in any other Events of Default referred to in this Section 4.1) and such failure shall continue for a period of fifteen (15) days after written notice thereof from the Beneficiary to the Grantor; provided, however, if such default is not in the payment of any sum due to Beneficiary hereunder, or was not the subject of an Event of Default for which notice was provided during the preceding six (6) months, and provided Grantor is diligently pursuing the cure of such default, then Grantor shall have an additional fifteen (15) days within which to cure such default prior to Beneficiary (or the Trustees) exercising any right or remedy available hereunder, at law or in equity;

(c)    Liens.    If any judgment creditor or lienor attempts to enforce its rights against the Premises and the Grantor has not provided for insurance or other security against such enforcement reasonably satisfactory to the Beneficiary;

(d)    Defaults under Other Documents.    If an Event of Default shall occur under the Note or any other Loan Document or any obligations, whether direct or contingent, of the Grantor or any Guarantor to the Beneficiary and shall not be cured within any applicable grace period;

(e)    Breach of Representations.    If any representation or warranty contained in this Deed of Trust, in any other Loan Document or in any other certificate, opinion, document or other instrument executed or delivered in connection with the Loan is knowingly materially false or misleading when made;

(f)    Condemnation or Destruction.    The condemnation, demolition, destruction or substantial damage of or to the Premises such that in the Beneficiary's reasonable judgment the Premises cannot be restored or rebuilt to a profitable condition within a reasonable time with funds available to the Grantor;

(g)    Sales or Transfers.    If the Grantor shall, voluntarily or by operation of law, sell, transfer, convey, lease, pledge, encumber, assign, grant a security interest in or otherwise hypothecate or dispose of all or any part of the Security Property (except for the removal and replacement of Equipment and the lease or leases of all or a portion of the Premises permitted hereby) or any membership interest in Grantor, without the prior written consent of the Beneficiary, which may be given or withheld in the sole discretion of the Beneficiary;

(h)     Rezoning.  The rezoning of the Premises so as to have a material adverse affect on the security provided by this Deed of Trust;

(i)     Receiver, Suspension, Attachment.  The appointment, pursuant to an order of a court of competent jurisdiction, of a trustee, receiver or liquidator of the Security Property or any part thereof, or of Grantor, or any termination or voluntary suspension of the transaction of business of Grantor, or any attachment, execution or other judicial seizure of all or any substantial portion of Grantor's assets or Guarantor's assets which attachment, execution or seizure is not discharged within sixty (60) days;

(j)     Bankruptcy Filing; Other Consents or Failures.  The Grantor or Guarantor shall file a voluntary case under any applicable bankruptcy, insolvency, debtor relief, or other similar law now or hereafter in effect, or the Grantor or Guarantor shall consent to the appointment of or taking possession by a receiver, liquidator, assignee, trustee, custodian, sequestrator (or similar official) of it or for any part of the Security Property or any substantial part of the its property or shall make any general assignment for the benefit of its creditors, or shall fail generally to pay its debts as they become due, or shall take any action in furtherance of any of the foregoing;

(k)     Involuntary Bankruptcy Filing.  A court having jurisdiction shall enter a decree or order for relief in respect of the Grantor or Guarantor, in any involuntary case brought under any bankruptcy, insolvency, debtor relief, or similar law now or hereafter in effect, or Grantor or Guarantor shall consent to or shall fail to oppose any such proceeding, or any such court shall enter a decree or order appointing a receiver, liquidator, assignee, custodian, trustee, sequestrator (or similar official) of it or for any part of the Security Property or any substantial part of the its property, or ordering the winding up or liquidation of the affairs of the Grantor or Guarantor, and such decree or order shall not be dismissed within sixty (60) days after the entry thereof;

(l)     Miscellaneous.  Without the prior written consent of Beneficiary in each case, (a) the dissolution or termination of existence of Grantor, voluntarily or involuntarily; (b) the amendment or modification in any material respect of the Operating Agreement of Grantor or of any resolutions relating to this transaction; or (c) the distribution of any of the capital of Grantor, except for distributions of the proceeds of the Loan secured hereby and cash from operations; as used herein, "cash from operations" shall mean any cash of the Grantor earned from operation of the Security Property, but not from a bulk sale or refinancing of the Security Property or from borrowing, available after paying all ordinary and necessary current expenses of the Grantor, including expenses incurred in the maintenance of the Security Property, and after establishing reserves to meet current or reasonably expected obligations of the Grantor;

(m)     Other Defaults.  Any other event occurring which, under this Deed of Trust or under the Loan Documents constitutes a default by Grantor or Guarantor hereunder or thereunder or gives Beneficiary the right to accelerate the maturity of the Secured Indebtedness, or any part thereof, secured hereby; or a default under any other documents evidencing or securing any other loan from Beneficiary to Grantor; all subject, however, to all applicable notice, cure and grace periods;

(n)     Lien.  If the lien of this Deed of Trust shall not constitute an enforceable first priority lien on the Security Property;

       (o)     <u>Operating Account</u>.  A breach of the provisions set forth in  Section 2.21 hereof; or

       (p)     <u>Loan to Value Ratio</u>.  A breach of the provisions set forth in  Section 2.23 hereof.

    4.2    <u>Remedies</u>.  Upon the occurrence of an Event of Default, any one o r more of the following remedies shall be available to the Trustees or the Beneficiary, or both,  as the case may be:

       (a)     <u>Acceleration and Sale</u>.  The Beneficiary may, at its option  and without further notice, declare the Secured Indebtedness immediately due and payable and shall have the right to have the Trustees take possession of the Premises and proceed to sell the Premises, as a whole or in parcels, at public auction, for cash or credit, upon a ny terms the Trustees shall deem appropriate.  Such sale may be held at or away from the Premises and may be postponed by the Trustees in their sole discretion.  Before such sale at public auction is made, there shall first be advertisement of the time, place and terms of sale five times every other day, excluding Sundays and holidays, so that the advertisements are published over a ten (10) day period, in accordance with the laws and customs of the District of Columbia, in a newspaper published or having a general circulation in the city or county in which  the Premises is located and there shall be given, at least thirty (30) days prior to such sale, written notice of the time, place and terms of sale by certified or registered mail to the then owner of the Premises at its last known address, as such owner and address appear on the records of the Beneficiary.  In the event of a postponement of any sale of the Premises, which may be done in the sole discretion of the Trustees, no new or additional notice need be given by the Trustees to the Grantor for the next scheduled sale of the Premises.  The Grantor shall pay to the Beneficiary or the Trustees, as applicable, upon demand, all reasonable expenses and fees incurred by the Trustees and the Beneficiary, or any of them, in connection with a ny such sale, including, but not limited to, the expenses of taking, advertising, processing, preparing and storing the Security Property and all court costs and reasonable fees and expenses of counsel to the Trustees and the Beneficiary, or any of them, in connection therewith. The Beneficiary may become the purchaser of the property so sold, and no purchaser shall be required to see to the proper application of the purchase money.  The proceeds of any such sale shall be applied in the manner prescribed by the Beneficiary, subject to applicable law, with any surplus being paid to the Grantor or any other person or entity who may be lawfully entitled  thereto.  The Trustees shall be entitled to reasonable compensation for their services, but not more than five percent (5%) of the proceeds of any such sale.

       Any sale made by the Trustees hereunder may be as an entirety or in such parcels as the Beneficiary may request.  The sale by the Trustees of less than the whole of the Premises shall not exhaust the power of sale herein granted, and the Trustees are specifically empowered to make successive sale or sales under such power until the whole of the Premises shall be sold; and, if the proceeds of such sale of less than the whole of the Premises shall be less than the aggregate of the Secured Indebtedness, this Deed of Trust and the lien hereof shall remain in full force and effect as to the unsold portion of the Premises just as though no sale had been made; provided, however, that the Grantor shall never have any right to require the sale of less than the whole of the Premises but the Beneficiary shall have the right, at its sole election, to request the Trustees to sell less than the whole of the Premises. The Trustees may, after any request or direction by the Beneficiary, sell not only the real property but also all other interests which are a part of the Security Property, or any part thereof, as a unit and as a part of a single sale, or may sell any part of the Security Property separately

from the remainder of the Security Property. It shall not be necessary for the Trustees to have taken possession of any part of the Premises or to have present or to exhibit at any sale any of the Security Property. The power of sale granted herein shall not be exhausted by any sale held hereunder by the Trustees or any substitute or successor of the Trustees, and such power of sale may be exercised from time to time and as many times as the Beneficiary may deem necessary until all of the Security Property has been duly sold and all Secured Indebtedness has been fully paid. In the event any sale hereunder is not completed or is defective in the opinion of the Beneficiary, such sale shall not exhaust the power of sale hereunder and the Beneficiary shall have the right to cause a subsequent sale or sales to be made hereunder.

(b)    <u>Right to Enter</u>. The Trustees, at the request of the Beneficiary, shall have the absolute right to enter the Premises and take possession thereof, and the Grantor agrees to surrender the Premises to the Trustees promptly upon demand. The Trustees shall have the right to operate the Premises themselves or through agents appointed by them and to receive the Rents and Profits. All the Rents and Profits received by the Trustees shall be applied to a reasonable compensation to the Trustees for their services and to the expenses of operating the Premises, with any excess to be applied to payment of the Secured Indebtedness.

(c)    <u>Rights of a Secured Party</u>. The Beneficiary shall have the remedies of a secured party under the UCC with respect to any Security Property subject to the UCC (the "UCC Property"), including, without limitation, the right to take immediate and exclusive possession of the UCC Property, or any part thereof, and, for that purpose, may, with or without judicial process, enter upon any place upon which the UCC Property or any part thereof may be and remove the same therefrom. The Beneficiary may require the Grantor to assemble the UCC Property and make it available to the Beneficiary at a place to be designated by the Beneficiary which is reasonably convenient to both parties. The Beneficiary shall give the Grantor at least ten (10) days' notice of the time and place of any public sale of the UCC Property or of the time after which any private sale or intended disposition thereof is to be made. The Beneficiary may buy the UCC Property at any public sale and, if the UCC Property is of the type which is customarily sold in a recognized market or is of the type which is the subject of widely distributed standard price quotations, at any private sale. Any such sale of the UCC Property may be held as part of and in conjunction with any judicial foreclosure sale or sale by the Trustees of the real estate which is a part of the Security Property, with the UCC Property and such real estate being sold as one lot if the Beneficiary so elects. The net proceeds realized upon any such disposition after deduction for the expenses of retaking, holding, preparing for sale, selling or the like and attorneys' fees and legal expenses incurred by the Beneficiary in connection therewith shall be applied to the Secured Indebtedness.

(d)    <u>Right to Perform</u>. The Beneficiary shall have the right, but not the obligation, to perform any obligation or covenant of the Grantor hereunder, and, if necessary, to enter the Premises with respect thereto. All costs incurred and sums advanced by the Beneficiary in connection therewith shall be secured by this Deed of Trust and shall be paid, together with interest thereon at the highest rate applicable to any of the Secured Indebtedness plus five percent (5%) per annum, by the Grantor to the Beneficiary on demand. The foregoing right shall include, but not be limited to, the payment by the Beneficiary of taxes, insurance premiums and liens with respect to the Premises. The performance of any such obligation or covenant by the Beneficiary shall not be deemed a waiver of any Event of Default by the Grantor with respect thereto. In no event shall the Beneficiary be deemed to be a mortgagee in possession as a result of its exercise of any right pursuant to this Deed of Trust.

(e)    Appointment of Receiver.  The Beneficiary, upon application to a court of competent jurisdiction, shall be entitled as a matter of strict right without notice to the Grantor and without regard to the sufficiency or value of any security for the Secured Indebtedness or the solvency of any person bound for its payment, to the appointment of a receiver to take possession of and to operate the Security Property and to collect and apply the Rents and Profits to the Secured Indebtedness.  The receiver shall have all of the rights and powers permitted under the laws of the District of Columbia.  The Grantor shall pay to the Beneficiary or the Trustees, upon demand, all expenses, including receiver's fees, reasonable attorneys' fees, costs and agent's compensation incurred pursuant to the provisions of this Section 4.2(e), and all such expenses shall be secured by the lien of this Deed of Trust.

## SECTION 5.  **MISCELLANEOUS PROVISIONS.**

5.1    Trustees.  The Trustees shall be under no duty to take any action hereunder except as expressly required, or to perform any act which would involve them in expense or liability or to institute or defend any suit in respect hereof, unless properly indemnified to their satisfaction.  All reasonable expenses, charges, counsel fees and other disbursements incurred or made by the Trustees in and about the administration and execution of the trust hereby created, and the performance of their duties and powers hereunder, shall be secured by this Deed of Trust prior to the other Secured Indebtedness, and shall bear interest at the highest rate of interest being charged on the Secured Indebtedness plus five percent (5%) per annum.  Both Trustees, or either of them, may exercise all the rights and powers of the Trustees hereunder.  The Beneficiary, with or without cause, is hereby authorized and empowered to substitute and appoint, by an instrument recorded wherever this Deed of Trust is recorded, a trustee in the place of any Trustee hereunder.

5.2    Further Assurances.  The Grantor shall, at its expense and promptly after any written request by the Beneficiary, do such acts and execute, acknowledge and deliver such documents and instruments as may be reasonably required from time to time by the Beneficiary in accordance with this Deed of Trust to more fully confirm and perfect the property and rights hereby conveyed, assigned and granted to the Trustees and the Beneficiary or intended now or hereafter to be conveyed, assigned or granted.

5.3    Notices.  All notices, requests, demands and other communication with respect hereto shall be in writing and shall be delivered by hand, sent prepaid by Federal Express (or a comparable overnight delivery service) or sent via telecopier and by the United States first-class mail, certified, postage prepaid, return receipt requested, to the following addresses:

If to the Beneficiary, to:

The Adams National Bank
1130 Connecticut Avenue, N.W., #200
Washington, D.C. 20036
Attn: Lawrence R. Johnson, Vice President
Telecopier No. (202) 835-3871

with a copy to:

Friedlander, Misler, Sloan, Kletzkin & Ochsman, PLLC
1101 - 17th Street, N.W., Suite 700
Washington, D.C. 20036-4704

Attn:  Leonard A. Sloan, Esq.
Telecopier No:   (202) 857-8343 or 872-0889

If to the Grantor, to:

2142 O Street, L.L.C.
1700 Q Street, N.W.
Washington, D.C. 20009
Attn:  Sean Shaparast, Managing Member
Telecopier No. (202) 234-5582

with a copy to:

Babak Movahedi, Esq.
1700 Q Street, N.W.
Washington, D.C. 20009
Telecopier No.  (202) 234-5582

If to the Trustees, to:

Lawrence R. Johnson
The Adams National Bank
1130 Connecticut Avenue, N.W., #200
Washington, D.C. 20036
Telecopier No. (202) 835-3871

with a copy to:

Friedlander, Misler, Sloan, Kletzkin & Ochsman, PLLC
1101 - 17th Street, N.W., Suite 700
Washington, D.C. 20036-4704
Attn:  Leonard A. Sloan, Esq.
Telecopier No:   (202) 857-8343 or 872-0889


Any notice, request, demand or other communication delivered or sent in the manner aforesaid shall be deemed given or made (as the case may be) upon the earliest of (a) the date it is actually received, (b) on the business day after the day on which it is delivered by hand, (c) on the business day after the day on which it is properly delivered by Federal Express (or a comparable overnight delivery service), or (d) on the third (3rd) business day after the day on which it is deposited in the United States mail, certified mail, return receipt requested and sent via telecopier.  Any party may change such party's address by notifying the other parties of the new address in any manner permitted by this Section 5.3.

5.4    Remedies Cumulative.  No power or remedy set forth herein conferred upon or reserved to the Trustees or the Beneficiary shall be exclusive of any other power or remedy set forth herein, and each such power and remedy shall be cumulative and in addition to every other power and remedy now or hereafter existing at law or in equity.  No delay or omission by the Trustees or the Beneficiary to exercise any such power or remedy shall be construed as a waiver thereof.  A waiver of any covenant, term or condition of this Deed of Trust or any Loan Document shall not be construed as a waiver of any subsequent breach of the same covenant,

term or condition. Consent by the Beneficiary to any transaction which is subject to consent or approval by the Beneficiary shall not be deemed a waiver of the right to require such consent or approval to future or successive transactions or actions.

    5.5   Waiver of Appraisement. The Grantor waives to the fullest extent permitted by law any right to insist upon or plead or in any way take advantage of any appraisement, valuation, stay, marshaling of assets, extension, redemption or moratorium law now or hereafter in force and effect so as to prevent, hinder or delay the enforcement of the provisions of this Deed of Trust or any rights or remedies the Beneficiary may have hereunder or at law or in equity.

    5.6   Successors and Assigns. Subject to the provisions hereof concerning assignments, all of the provisions of this Deed of Trust shall apply to, bind and inure to the benefit of the successors and assigns of the Grantor, the successors in trust of the Trustees, and the endorsees, transferees, successors and assigns of the Beneficiary.

    5.7   Severability. Should any one or more of the provisions of this Deed of Trust be held to be void, invalid, illegal or unenforceable in any respect, the same shall, at the option of the Beneficiary, not affect any other provision of this Deed of Trust, but the remainder hereof shall be effective as though such provision had never been contained herein.

    5.8   Amendments. This Deed of Trust may be amended only by an instrument in writing signed by the Grantor, the Beneficiary and at least one of the Trustees.

    5.9   Governing Law. This Deed of Trust shall be governed by and construed in accordance with the laws of the District of Columbia, without reference to conflict of laws principles.

    5.10   Counterparts. This Agreement may be executed for the convenience of the parties in several counterparts, which are in all respects similar and each of which is to be deemed to complete in and of itself, and any one of which may be introduced in evidence or used for any other purpose without the production of the other counterparts thereof.

    IN WITNESS WHEREOF, the Grantor has caused this Deed of Trust, Security Agreement and Fixture Filing to be executed and ensealed on its behalf by SEAN SHAHPARAST, the Authorized and Managing Member of the Grantor, and Grantor does hereby appoint the said SEAN SHAHPARAST, its attorney-in-fact to acknowledge and deliver these presents on its behalf, all as of the day and year first above written.

**WITNESS:**

**GRANTOR**

2142 O STREET, L.L.C., a District of Columbia limited liability company

By: _____

_____
Print Name:
Print Title:
[seal]

Sean Shahparast, Managing Member

9 - 30 - 01

The undersigned hereby executes this instrument as secured party under the Uniform Commercial Code as codified under the law of the District of Columbia, it being intended that this Deed of Trust be a security agreement for purposes thereof.

IN WITNESS WHEREOF, the Beneficiary has caused this Deed of Trust, Security Agreement and Fixture Filing to be executed and ensealed on its behalf by LAWRENCE R. JOHNSON, a Vice President of the Beneficiary, and Beneficiary does hereby appoint the said LAWRENCE R. JOHNSON, its attorney-in-fact to acknowledge and deliver these presents on its behalf, all as of the day and year first above written.

**WITNESS:**

**BENEFICIARY**

THE ADAMS NATIONAL BANK

By: _____

_____
Print Name:
Print Title:

Lawrence R. Johnson, Vice President

[Corporate Seal]

DISTRICT OF COLUMBIA                    ) ss:

I, _____ a Notary Public in and for the aforesaid said jurisdiction, do hereby certify that SEAN SHAHPARAST, who is personally well known to me as (or satisfactorily proven to me to be) the person named as attorney-in-fact in the foregoing instrument bearing the date of _____ ___, 2004, personally appeared before me in said jurisdiction and acknowledged that he is the Managing Member of 2142 O STREET, L.L.C., the Grantor in the foregoing instrument; that he has been duly authorized to execute and deliver the foregoing instrument for the purposes therein contained and that the same is his act and deed and the act and deed of 2142 O STREET, L.L.C.

IN WITNESS WHEREOF, I have set my hand and Notarial Seal, this 30th day of September, 2004.

[SEAL]

Notary Public

Babak Movanedi
Notary Public, District of Columbia
My Commission Expires 07-31-2007

My Commission expires:

_____

DISTRICT OF COLUMBIA                    ) ss:

I, _____, a Notary Public in and for the aforesaid said jurisdiction, do hereby certify that LAWRENCE R. JOHNSON, who is personally well known to me as (or satisfactorily proven to me to be) the person named as attorney-in-fact in the foregoing instrument bearing the date of _____ ___, 2004, personally appeared before me in said jurisdiction and acknowledged that he is a Vice President of THE ADAMS NATIONAL BANK, the Beneficiary in the foregoing instrument; that he has been duly authorized to execute and deliver the foregoing instrument for the purposes therein contained and that the same is his act and deed and the act and deed of THE ADAMS NATIONAL BANK.

IN WITNESS WHEREOF, I have set my hand and Notarial Seal, this 30th day of September, 2004.

[SEAL]

Notary Public

My Commission expires:

_____

EXHIBIT A

LEGAL DESCRIPTION OF LAND

All that Land situate in the District of Columbia, more particularly described as follows:

BEING KNOWN AND DESIGNATED as

LOT 218 IN ISAAC KIRKSTEINE AND OTHERS SUBDIVISION OF SQUARE 69, AS PER PLAT RECORDED IN THE OFFICE OF THE SURVEYOR FOR THE DISTRICT OF COLUMBIA IN LIBER 48 AT FOLIO 120.

SAID PROPERTY BEING NOW KNOWN FOR ASSESSMENT AND TAXATION PURPOSES AS LOT 218 IN SQUARE 69.

And commonly known as 2142 O Street, NW, Washington, D.C.

Return recorded original to:          Friedlander, Misler, Sloan,
                                        Kletzkin & Ochsman, PLLC
                                      1101 17th Street, N.W., Suite 700
                                      Washington, D.C. 20036
                                      Attn:    Brian J. Fender, Esq.

SECURITY AFFIDAVIT
CLASS 1 AND CLASS 2

I (We), Sean Shahparast and Hamid Kazemi, the Owner(s) of the real property described within, certify, subject to criminal penalties for making false statements pursuant to Section 404 of the District of Columbia Theft and White Collar Crimes Act of 1982, effective December 1, 1982 (DC Law 4-164; DC Code 22-2514), that the real property described within is either Class 1 Property or Class 2 Property, as those classes of property are established pursuant to Section 412a of the District of Columbia Real Property Tax Revision Act of 1974, approved September 3, 1974 (88 Stat. 1051 DC Code 47-813), with five (5) or fewer units.

_____
2142 O Street, LLC, by Sean Shahparast,
Managing Member

_____
2142 O Street, LLC, by Hamid Kazemi, Member

ISTRICT OF COLUMBIA:  to wit

Subscribed and sworn to before me this September 30, 2004

Notary Public _____

My Commission Expires _____ (seal)

Babak Movahedi
Notary Public, District of Columbia
My Commission Expires 07-31-2007

# EXHIBIT 4

## SPRINGING GUARANTY

This **SPRINGING GUARANTY** (the "**Springing Guaranty**") is made as of the ___ day of September, 2004, by **SEAN SHAHPARAST**, having an address of _____ (the "**Springing Guarantor**"), to and for the benefit of **THE ADAMS NATIONAL BANK** (the "**Lender**").

### Recitals

A.     2142 O STREET, L.L.C., a District of Columbia limited liability company (the "**Borrower**"), has applied for a loan from Lender in the amount of Two Million Five Hundred Eighteen Thousand Two Hundred Dollars and No Cents ($2,518,200.00) (the "**Loan**"), to be evidenced by that certain Deed of Trust Note, dated of even date herewith, in the original principle amount of Two Million Five Hundred Eighteen Thousand Two Hundred Dollars and No Cents ($2,518,200.00)(the "**Note**") made payable by Borrower to the order of Lender, and secured by, among other things, that certain Purchase Money Deed of Trust, Security Agreement and Fixture Filing of even date herewith (the "**Deed of Trust**") from Borrower to LAWRENCE R. JOHNSON, as trustee, (the Deed of Trust, together with any other documents executed and delivered in connection with the Loan, the "**Loan Documents**").

B.     Lender is unwilling to make the Loan unless Springing Guarantor provides this Springing Guaranty.

C.     Springing Guarantor is a fifty percent (50%) member of the Borrower and will be benefited by the disbursement by the Lender of the proceeds of the Loan to the Borrower.

D.     Springing Guarantor desires to give this Springing Guaranty to the Lender in order to induce the Lender to make the Loan.

NOW, THEREFORE, in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Springing Guarantor agrees as follows:

1.     The Springing Guarantor unconditionally and absolutely guarantees that he shall be personally liable to Lender to the extent of any loss, damage or cost incurred by Lender resulting from: (i) the breach of any material warranty or representation by the Borrower or Springing Guaranty under the Loan Documents, (ii) the filing of any motions by the Borrower or Springing Guarantor thereby interfering with the Lender=s or the trustee's efforts to enforce the Note, the Deed of Trust or any other Loan Documents, (iii) fraud or intentional misrepresentation by the Borrower or Springing Guarantor, (iv) insurance proceeds, condemnation awards, or other sums or payments attributable to the Property (as defined in the Deed of Trust) not applied in accordance with the

– 1 –

provisions of the Loan Documents, except to the extent the Borrower did not have the legal right, because of a bankruptcy, receivership, or similar judicial proceeding, to direct the disbursement of such sums or payments, (v) all rents received by Borrower or Borrower=s agents or Springing Guarantor following any default under any of the Loan Documents, which default has not been cured within any applicable cure or grace period, which rent is not applied to payment of principal and interest due under the Note and payments of utilities, normal operating expenses of the Property, real estate taxes and assessments and insurance on the Property, as he become due and payable, (vi) misapplication of rents or security deposits collected by Borrower or Springing Guarantor or any of their agents in advance, or (vii) failure of Borrower or Springing Guarantor to comply with all provisions of any of the Loan Documents regarding delivery of financial or operating statements to Lender.

2.      The Springing Guarantor hereby subordinates any and all indebtedness now or hereafter owed to Springing Guarantor, or any entity in which Springing Guarantor has an equity interest in, to the indebtedness of Borrower to Lender, and agrees with Lender that Springing Guarantor shall not: (i) demand or accept any payment from Borrower at any time that there exists a default beyond applicable grace and cure periods, if any, under any of the Loan Documents; (ii) claim any offset or other reduction of Springing Guarantor's obligations hereunder because of any such indebtedness(es); (iii) take any action to obtain any of the security described in and encumbered by the Loan Documents; or (iv) have any right of subrogation whatsoever with respect to the Note or other Loan Documents or to any monies due and unpaid thereon or any collateral securing the same, unless and until the Lender shall have received payment in full of all sums at any time secured by the Deed of Trust securing the Note and the other Loan Documents.

3.      The Springing Guarantor hereby consents and agrees that Lender may at any time, and from time to time, without notice to or further consent from the Springing Guarantor, either with or without consideration, surrender any property or other security of any kind or nature whatsoever held by it or by any person, firm or borrower on its behalf or for its account, securing any indebtedness or liability hereby guaranteed; substitute for any collateral so held by it, other collateral of like kind, or of any kind; modify the terms of the Note or any other Loan Documents; extend or renew the Note for any period; grant releases, compromises and indulgences with respect to the Note or any other Loan Documents to any persons or entities now or hereafter liable thereunder or hereunder; release any Springing Guarantor or endorser of the Note; take Borrower's bank accounts held with Lender; or take or fail to take any action of any type whatsoever. No such action which Lender shall take or fail to take in connection with the Note or other Loan Documents shall release the Springing Guarantor's obligations hereunder, affect this Springing Guaranty in any way, or afford the Springing Guarantor any recourse against Lender. The provisions of this Springing Guaranty shall extend and be applicable to all renewals, amendments, extensions, consolidations and modifications of or substitutions for the Note or other Loan Documents and any changes in the business of Borrower.

4.      The Springing Guarantor hereby waives and agrees not to assert or take advantage of: (a) any defense that may arise by reason of the incapacity, lack of authority, death, bankruptcy, insolvency or disability of the maker(s) of the Note or any other person or entity, or the failure of

- 2 -

Lender to file or enforce a claim against the estate (either in administration, bankruptcy, or any other proceeding) of the maker(s) of the Note or any other person or entity; (b) any defense based upon an election of remedies by Lender which destroys or otherwise impairs any subrogation rights of the Springing Guarantor or the right of the Springing Guarantor to proceed against the maker(s) of the Note for reimbursement; (c) any defense based upon the failure of the Borrower or any other person or entity to take any action or refrain from action; (d) any duty on the part of Lender to disclose to the Springing Guarantor any facts it may now or hereafter know; (e) acceptance or notice of acceptance of this Springing Guaranty; (f) notice of presentment and demand for payment of any of the indebtedness or performance of any of the obligations hereby guaranteed; (g) protest and notice of dishonor or of default to the Springing Guarantor or to any other party with respect to the indebtedness or performance of obligations hereby guaranteed; (h) the invalidity or unenforceability of the Note or any other Loan Documents; (i) any defense (other than payment) that the Springing Guarantor may or might have relating to his undertakings, liabilities and obligations hereunder; or (j) any defense which may arise under the Equal Credit Opportunity Act, 11 U.S.C. ' 1691, et seq. All laws exempting real or personal property from execution are hereby waived, and no benefit of exemption will be claimed under or by virtue of any exemption law in force or which hereafter may be passed. Without in any way limiting the foregoing, Springing Guarantor hereby waives any act or omission (except acts and omissions in bad faith, gross negligence or willful misconduct) which may be deemed to change the scope of Springing Guarantor's risk.

5.    To the best of Springing Guarantor=s knowledge, the execution, delivery, observance and performance of this Springing Guaranty by Springing Guarantor does not and will not conflict with or result in a breach of the terms or provisions of any existing rule, regulation or order of any court or governmental body or of any indenture, agreement or instrument to which the Springing Guarantor is a party, or by which he is bound, or to which he is subject, or constitute a default thereunder.

6.    This Springing Guaranty is delivered in addition to all liens upon, and rights of setoff against the money, securities or other property of Springing Guarantor now or hereinafter in the possession of or on deposit with Lender, whether held in a general or special account or deposit with Lender, or for safekeeping or otherwise, and every such lien or right of setoff may be exercised without demand upon or notice to Springing Guarantor; no lien or right of setoff shall be deemed to have been waived by any act or conduct on the part of Lender, or by any neglect to exercise such right of setoff or to enforce such lien, or by any delay in so doing, and every right of setoff or lien is specifically waived or released by an instrument in writing executed by Lender.

7.    At the option of Lender, and with or without demand or notice, all or any part of Springing Guarantor's obligations hereunder shall become due and payable immediately, irrespective of any agreed maturity, upon the occurrence of one or more of the following events: (a) Springing Guarantor becomes personally liable to Lender pursuant to the provisions of Section 1 hereof, or (b) the default beyond any applicable cure period by Springing Guarantor of any of the terms and conditions set forth herein.

- 3 —

8.    Lender may without any notice whatsoever to anyone, sell, assign or transfer all of said indebtedness, obligations and liabilities of Borrower or any part thereof.  In that event, each and every successive assignee, transferee or holder of all or any part of said indebtedness, obligation and liability shall have the right to enforce this Springing Guaranty by suit or otherwise for its own benefit as fully as if such assignee, transferee or holder were herein by name specifically given such rights, powers, and benefits; provided, however, that Lender shall continue to have an unimpaired right to enforce this Springing Guaranty for its benefit, as to so much of said indebtedness, obligations and liabilities that it has not sold, assigned or transferred.

9.    The liability of the Springing Guarantor under this Springing Guaranty shall be direct and immediate and not conditional or contingent upon the pursuit of any remedies against the maker(s) of the Note or any other person or entity, or against securities or liens available to Lender, its successors, endorsees or assigns.  Springing Guarantor waives any right to require that an action be brought against the maker(s) of the Note or any other person or entity or to require that resort be had to any security or to any balance of any deposit account or credit on the books of Lender in favor of the maker(s) of the Note or any other person or entity prior to payment in full of the sums due pursuant to the Note and other Loan Documents.

10.    All notices, requests, demands and other communications with respect hereto shall be in writing and shall be delivered by hand, via telecopier, sent prepaid by Federal Express (or a comparable overnight delivery service), or sent by the United States first-class mail, certified, postage prepaid, return receipt requested, to the following addresses:

If to the Lender, to:

The Adams National Bank
1130 Connecticut Ave., N.W., Suite 200
Washington, D.C. 20036
Attn:   Lawrence R. Johnson, Vice President
Telecopier No: (202) 835-3871

With copies to:

Leonard A. Sloan, Esq.
Friedlander, Misler, Sloan, Kletzkin & Ochsman, PLLC
1101 Seventeenth Street, N.W., #700
Washington, D.C.  20036-4704
Telecopier No: (202) 857-8343

If to the Springing Guarantor, to:

Sean Shahparast

- 4 –

_____
Telecopier No.: (___) _____

with a copy to:

Mark G. Griffin, Esq.
Griffin, Farmer & Murphy, LLP
1912 Sunderland Place, N.W.
Washington, D.C. 20036-1608
Telecopier No. (___) _____

Any notice, request, demand or other communication delivered or sent in the manner aforesaid shall be deemed given or made (as the case may be) upon the earliest of (a) the date it is actually received, (b) on the business day after the day on which it is delivered by hand or via telecopier, (c) on the business day after the day on which it is properly delivered by Federal Express (or a comparable overnight delivery service), or (d) on the third (3rd) business day after the day on which it is deposited in the United States mail. Any party may change such party's address by notifying the other parties of the new address in any manner permitted by this paragraph 11.

11.    This Springing Guaranty may not be changed, or any of its provisions waived, except by written agreement signed by the owner or holder of the Note. This Springing Guaranty shall be irrevocable and shall remain in full force and effect until all obligations guaranteed hereby have been performed, at which time this Springing Guaranty shall become null and void. The liability of the Springing Guarantor hereunder shall be reinstated and revived and the rights of the Lender shall continue if and to the extent that for any reason any payment by or on behalf of the Borrower or any Springing Guarantor is rescinded or must be otherwise restored by the Lender, whether as a result of any proceedings in bankruptcy or reorganization or otherwise, provided, however, that if the Lender chooses to contest any such matter at the request of the Springing Guarantor, the Springing Guarantor agrees to indemnify and hold the Lender harmless with respect to all costs (including, without limitation, reasonable attorneys' fees) of such litigation.

12.    In the event this Springing Guaranty is placed in the hands of an attorney for enforcement, whether suit be brought or not, Springing Guarantor will reimburse the party seeking enforcement of all costs and expenses incurred, including, without limitation, reasonable attorneys' fees.

13.    This Springing Guaranty shall inure to the benefit of and may be enforced by Lender and each subsequent holder from time to time of the Note, and shall be binding upon and enforceable against the Springing Guarantor and his successors and assigns.

14.    The invalidity or unenforceability of any one or more provisions of this Springing Guaranty shall not affect the validity or enforceability of the remaining provisions of this Springing

C:\Documents and Settings\plen\Desktop\Bryan's Docs\2142 O ST\2nd\Springing Guaranty.2.doc

Guaranty. This Springing Guaranty shall be governed, construed and interpreted as to validity, enforcement and all other respects, in accordance with the laws of the District of Columbia.

15.    This writing is intended by the parties as a final expression of this Springing Guaranty and is also intended as a complete and exclusive statement of the terms of this agreement. No course of dealing or trade usage, and no parol evidence of any nature, shall be used to supplement or modify any terms or conditions set forth herein. There are no conditions to the full effectiveness of this Springing Guaranty.

16.    The Springing Guarantor warrants to the Lender that it has adequate means to obtain from the Borrower on a continuing basis information concerning the financial condition of the Borrower and that it is not relying on the Lender to provide such information either now or in the future.

17.    Springing Guarantor hereby waives all errors and omissions in connection with Lender's administration of the Loan, except behavior which amounts to bad faith, willful misconduct or gross negligence.

18.    This Springing Guaranty represents the final agreement between Lender and Springing Guarantor and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no oral agreements between the parties.

19.    Springing Guarantor irrevocably waives, to the maximum extent not prohibited by law, any right Springing Guarantor may now or hereafter have to a trial by jury with respect to any litigation directly or indirectly arising out of or in connection with this Springing Guaranty or any of the Loan Documents to which Springing Guarantor is a party.

IN WITNESS WHEREOF, Springing Guarantor has executed this Springing Guaranty as of the day and year first above written.

WITNESS:                              SPRINGING GUARANTOR

Sean Shahparast
Print Name:                           Sean Shahparast    managing member

- 6 -

C:\Documents and Settings\plen\Desktop\Bryan's Docs\2142 O ST\2nd\Springing Guaranty.2.doc

STATE OF                                    )
                                            ): ss
COUNTY OF                                   )

I, _Babak Movahed_, a Notary Public in and for the aforesaid jurisdiction, hereby certify that on this 30 day of _September_, 2004, SEAN SHAHPARAST, well known to me to be the person described in and who executed the foregoing instrument, personally appeared before me and acknowledged that he executed the same as his free act and deed.

Given under my hand and seal.

[SEAL]

Notary Public

My Commission Expires:

Babak Movahedi
Notary Public, District of Columbia
My Commission Expires 07-31-2007

– 7 –